**UNITED STATES of America, Appellee,**

v.

**Carrye E. MAXWELL, Appellant.**

**No. 89–3130.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 6, 1990.

Decided Dec. 11, 1990.

G. Godwin Oyewole, Alexandria, Va. (appointed by this Court), for appellant.

John G. Horan, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher, Roy W. McLeese, III, Washington, D.C., and Brian M. Murtagh, New York City, Asst. U.S. Attys., Dept. of Justice, were on the brief, for appellee.

Before WALD, Chief Judge, D.H. GINSBURG and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Chief Judge WALD.

WALD, Chief Judge:

Following a trial by jury, appellant, Carrye E. Maxwell, was convicted on two counts of wire fraud in violation of 18 U.S.C. § 1343 and three counts of false personation of an officer or employee of the United States in violation of 18 U.S.C. § 912. Appellant makes the following arguments on appeal: (1) the district court erred in denying her pretrial motion to suppress evidence seized from her apartment pursuant to a search warrant that she alleges was overly broad; (2) there was insufficient evidence to support her convictions on the wire fraud counts; and (3) there was insufficient evidence to support her convictions for false personation. We reject all of these challenges and affirm appellant's convictions.

## I. BACKGROUND

The charges against appellant arose from a complex series of financial transactions she conducted during 1985 and 1986 from her apartment in Washington, D.C. The wire fraud charges were based on appellant's solicitation of loan applications from a number of persons and the subsequent transfer of funds by two interested borrowers into an account controlled by appellant. The government's evidence, uncontradicted by appellant, showed that appellant claimed that she could procure large loans from a group of offshore lenders and that she was a trustee of funds for these lenders. The evidence further showed that appellant represented to the potential borrowers that they would have to deposit certain funds into an escrow account as evidence that they intended to complete the loan applications and accept the loans, but that these funds would be fully refunded if the lenders failed to make the loans. Appellant's activities ultimately resulted in the wire transfer of funds into this account by two of the interested borrowers, James Whatley and Robert Capuano. The loans were never funded, and the monies deposited by Whatley and Capuano were never returned.

The false personation counts were based on appellant's representations while offering bonds or large quantities of commodities for sale to three potential purchasers, Leo Hansen, Harold Gardner, and Charles Waggoner. The government's evidence, again uncontradicted by appellant, showed that appellant represented herself to these individuals as a "Special Consultant" to the United States Department of the Treasury ("Treasury Department") in connection with the U.S. Recycle Program, an enterprise appellant claimed to be operating under special authorization from the Treasury Department. She further claimed that she was authorized by the government to solicit loans in exchange for "special issue" Treasury Bonds and to sell government-owned and other commodities, with the pro-

ceeds going to the government. The Treasury Department, in fact, had never retained appellant in any capacity and had no official connections with the U.S. Recycle Program.

During the government's investigation of appellant's activities, a Secret Service agent applied for and received a warrant to search appellant's apartment. The search warrant was executed in late March of 1986, resulting in the seizure of a large quantity of appellant's business records and equipment. At a pretrial suppression hearing, the district court rejected appellant's contention that the search warrant was overbroad and refused to suppress the evidence. Material seized during the search was subsequently used against appellant during her trial.

## II. ANALYSIS

### A. *The Validity of the Search Warrant*

Appellant argues that the search warrant obtained by the federal agents for the search of her apartment was overbroad, amounting in effect to a general warrant, and that the resulting search thus violated her rights under the fourth amendment. The government responds that the warrant, as supplemented by material specifically incorporated into it and by an underlying affidavit, was sufficiently particularized to pass muster under judicial precedent and that, even if it was not, the good faith exception to the exclusionary rule precludes suppression of the evidence. Although we agree with appellant that the warrant was not sufficiently particularized to survive review, we believe the good faith exception does apply and that the evidence therefore should not be suppressed.

■ The fourth amendment categorically prohibits the "general, exploratory rummaging [of] a person's belongings" by requiring "a 'particular description' of the things to be seized." *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 2039, 29 L.Ed.2d 564 (1971). By limiting searches "to the specific areas and things for which there is probable cause to

search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84, 107 S.Ct. 1013, 1016, 94 L.Ed.2d 72 (1987). When assessing whether a warrant is sufficiently particular, however, "'[w]e are concerned with the realities of administration of criminal justice. It is sufficient if the warrant signed by the judicial officer is particular enough if read with reasonable effort by the officer executing the warrant.'" *United States v. Vaughn*, 830 F.2d 1185, 1186 (D.C.Cir.1987) (quoting *Moore v. United States*, 461 F.2d 1236, 1238 (D.C.Cir.1972)).

■ This circuit has held, along with most others, that in some circumstances a search warrant may be construed with reference to the affidavit supporting it for purposes of satisfying the particularity requirement. The affidavit may serve this function, however, only if "'(1) the affidavit accompanies the warrant, and in addition (2) the warrant uses "suitable words of reference" which incorporate the affidavit by reference.'" *United States v. Vaughn*, 830 F.2d at 1186 (quoting *Moore v. United States*, 461 F.2d at 1238). *See also, e.g., United States v. Hillyard*, 677 F.2d 1336, 1340 (9th Cir.1982); *United States v. Curry*, 911 F.2d 72, 76–77 (8th Cir.1990); *United States v. Roche*, 614 F.2d 6, 8 (1st Cir. 1980). The incorporation issue is crucial here because, for the reasons explained below, we believe that the warrant in this case was fatally overbroad if the supporting affidavit is unavailable to limit the warrant's scope.

■ The warrant itself contained no description of the premises to be searched or the items to be seized, but did expressly incorporate a description of the premises that was attached to the application for the search warrant, as well as a one-paragraph description of the categories of items to be seized that also was attached to the application.[1] The warrant did not, however, ex-

1. The magistrate accomplished this incorpo- ration by typing, in the places provided on the

pressly incorporate the three-page affidavit prepared by the federal agent who applied for the warrant, which provided details of the wire fraud scheme appellant was suspected of perpetrating. The warrant did state, in preprinted language, that the agent presented an affidavit to the issuing magistrate and that the magistrate "was satisfied that the affidavit(s) ... establish probable cause" justifying issuance of a warrant, but there were no explicit words on the warrant indicating that the magistrate intended to incorporate the contents of the affidavit into the warrant and thereby limit its scope by reference to the affidavit, nor did either of the two attachments that were explicitly incorporated into the warrant make reference to the affidavit.

Although there is little case law specifically addressing what suffices to incorporate an affidavit into a warrant by reference, we believe that something more is required than a boilerplate statement that the affidavit or affidavits presented to the

magistrate constitute probable cause for issuing the warrant. *See, e.g., United States v. Strand,* 761 F.2d 449, 453–54 (8th Cir.1985) (affidavit was not incorporated where warrant stated only that affidavits were provided to issuing magistrate and that they provided probable cause); *United States v. Curry,* 911 F.2d at 77.[2] Courts have long recognized that there is "a fundamental distinction between the warrant and the underlying affidavit," *Moore v. United States,* 461 F.2d at 1238,[3] and the express incorporation rule recognizes this distinction by requiring the magistrate to manifest an explicit intention to incorporate an affidavit. We therefore reaffirm that, in order for an affidavit to be viewed as limiting the scope of a warrant, the warrant must not only attach the affidavit, but must also contain "suitable words of reference" evidencing the magistrate's explicit intention to incorporate the affidavit. Because there were no such "suitable words" in the warrant at issue here, the affidavit

---

warrant for describing the premises to be searched and the items to be seized, "Attachment #1" and "Attachment #2" respectively, thereby referencing the first two attachments to the search warrant application filed with the magistrate.

2. Some circuits that have adopted the incorporation-by-reference standard apply it less exactingly than others, most commonly in situations where an unincorporated affidavit is actually used to limit the search or where the affiant also conducts the search. *See, e.g., United States v. Wuagneux,* 683 F.2d 1343, 1351 n. 6 (11th Cir.1982); *United States v. Gahagan,* 865 F.2d 1490, 1497–98 (6th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 3242, 106 L.Ed.2d 590 (1989). Although this circuit has never adopted such a relaxed construction of the incorporation rule, we did hold in one case that the incorporation requirement had been satisfied even though the warrant did not contain any express words of incorporation. *See Moore v. United States,* 461 F.2d at 1239. That holding, however, was premised on the court's conclusion that this otherwise "critical deficiency" was excused because the warrant under challenge had issued pursuant to a statute of the District of Columbia (since repealed) requiring judges to attach all supporting affidavits to the warrants they issued. The court stated that "[t]he fact that the affidavit was attached to the warrant ... as a matter of legal requirement—and not as a matter of accident or grace—serves as a sound basis for applying the doctrine of incorporation by reference...." *Id.* No such statutory re-

quirement attaches to this case, however, and later decisions of this circuit have repeated the general rule that there must be express words of incorporation before an affidavit will be deemed to limit the scope of a warrant. *See, e.g., United States v. Womack,* 509 F.2d 368, 382 (D.C.Cir.1972), *cert. denied,* 422 U.S. 1022, 95 S.Ct. 2644, 45 L.Ed.2d 681 (1975); *United States v. Vaughn,* 830 F.2d at 1186; *United States v. Ford,* 553 F.2d 146, 169 n. 64 (D.C.Cir.1977). In the absence of some express legal requirement of the sort present in *Moore,* we conclude, for the reasons given in the text, that the better policy is to require in all instances that there be explicit words of incorporation in the warrant, with other factors, such as reliance on an unincorporated affidavit by the officers executing the warrant, left for consideration by the court in determining whether the good faith exception to the exclusionary rule should be applied to excuse deficiencies in the warrant.

3. That "fundamental distinction" is the difference between allowing searches only where the need for invading a person's privacy has been subjected to "the detached scrutiny of a neutral magistrate," as required by the Warrant Clause, and permitting them in the discretion of "a law enforcement officer 'engaged in the often competitive enterprise of ferreting out crime,'" which is precisely what the Warrant Clause forbids. *United States v. Chadwick,* 433 U.S. 1, 9, 97 S.Ct. 2476, 2482, 53 L.Ed.2d 538 (1977) (quoting *Johnson v. United States,* 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948)).

detailing appellant's fraudulent activities is unavailable to limit the scope of the warrant.[4]

■ As indicated earlier, we believe that, without benefit of the limiting affidavit, the warrant in this case was fatally overbroad. The description of the items to be seized that was incorporated into the warrant authorized the seizure of the following categories of items:

> any and all seals representing or appearing to represent any agency of the United States; any and all writings and documents representing or appearing to represent any agency of the United States; any interstate or foreign correspondence, handwritten notes, carbons, bank records, negotiable instruments, logs, ledgers, address books, travel documents, memoranda or notations pertaining to interstate or foreign commerce; transmissions made pertaining to interstate or foreign commerce; any and all documents generated in connection with or evidencing a scheme, artifice or devise of transactions in interstate or foreign commerce; any electronic memory equipment, materials, tapes, records, discs, discettes or any other medium used to store information pertaining to interstate or foreign commerce; all machinery, equipment, or transmitting devices used or capable of being used to send via interstate or foreign commerce: sounds, signals, pictures, or writings transmitted by wire for the purpose of executing such scheme or artifice.

Appendix A to Brief for Appellee. The description then concluded with the following statement: "All of which are fruits, instrumentalities and evidence of crimes against the United States of America, that is fraud by wire in violation of Title 18, United States Code, Section 1343." *Id.*

This description alleged, in effect, that all or virtually all of appellant's business records and equipment constituted evidence of federal wire fraud violations of unspecified character. Although the government argues that the affidavit filed with the warrant application provided probable cause for the magistrate to conclude that appellant's business indeed was entirely devoted to a wire fraud scheme, the affidavit, in fact, related only very particular information implicating appellant in a specific scheme to defraud and made no assertions concerning the nature or extent of appellant's business dealings as a whole. The government also argues that the reference to 18 U.S.C. § 1343 in the incorporated description of the items to be seized sufficiently limited the scope of the warrant by restricting the search to business records that evidenced a scheme to commit wire fraud. Although a warrant's reference to a particular statute may in certain circumstances limit the scope of the warrant sufficiently to satisfy the particularity requirement, *see, e.g., In re Grand Jury Proceedings,* 716 F.2d 493, 499 (8th Cir.1983), it will not do so where, as here, the warrant authorizes seizure of all records and where, as here, the reference is to a broad federal statute, such as the federal wire fraud statute. References to broad statutes realistically constitute no limitation at all on the scope of an otherwise overbroad warrant and therefore cannot save it.[5]

---

**4.** Although we hold that the warrant in this case did not incorporate the affidavit by reference, we recognize that the "realities of administration of criminal justice," *Moore v. United States,* 461 F.2d at 1238, counsel against an overly exacting standard for determining when a warrant successfully incorporates a supporting affidavit. In this case, we believe it would have been sufficient if the warrant, in addition to referencing "Attachment # 2" in the space provided for describing the items to be seized, had also made some reference in that space to the affidavit or to "Attachment # 3," which is how the affidavit was captioned in the warrant application presented to the magistrate. *See, e.g., Huffman v. United States,* 470 F.2d 386, 390 n. 3,

393 n. 7 (D.C.Cir.1971), *rev'd on rehearing on other grounds,* 502 F.2d 419 (D.C.Cir.1974) (affidavit was successfully incorporated where warrant authorized seizure of certain property with words "namely see attached affidavit").

**5.** *See, e.g., United States v. Roche,* 614 F.2d at 8 (federal mail fraud statute); *United States v. Abrams,* 615 F.2d 541, 542–43 (1st Cir.1980) (federal statute proscribing fraud against the government); *Rickert v. Sweeney,* 813 F.2d 907, 909 (8th Cir.1987) (federal conspiracy and tax evasion statutes); *United States v. Spilotro,* 800 F.2d 959, 965 (9th Cir.1986) ("warrants reciting generic classifications [of items to be seized]

■ Although we conclude that the warrant was overly broad, we nonetheless decline to order the suppression of the evidence seized pursuant to it because we believe that the agents in this case reasonably relied on the warrant in good faith. Under *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), and *Massachusetts v. Sheppard*, 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984), the exclusionary rule should not be applied to exclude evidence seized pursuant to a defective search warrant if the officers conducting the search acted in "objectively reasonable reliance" on the warrant and the warrant was issued by a detached and neutral magistrate. *Id.* at 987–88, 104 S.Ct. at 3427–28. Here, the agent who applied for the warrant properly prepared an affidavit detailing the illegalities of which appellant was suspected and presented it to a neutral and detached magistrate. The magistrate determined that probable cause existed to search appellant's apartment for evidence of the suspected illegalities, but neglected to incorporate the agent's affidavit into the warrant. As in *Sheppard*, "[a]n error of constitutional dimensions may have been committed with respect to the issuance of the warrant, but it was the judge, not the police officers, who made the critical mistake." *Id.* at 990, 104 S.Ct. at 3428. Because the exclusionary rule is designed " 'to deter unlawful searches by the police, not to punish the errors of magistrates and judges,' " *id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 263, 103 S.Ct. 2317, 2345, 76 L.Ed.2d 527 (1983) (White, J., concurring in judgment)), it should not be applied where the executing officers reasonably rely on the validity of a warrant issued to them. When the magistrate signed the warrant at issue here, with the affidavit apparently attached although not specifically incorporated, the agent reasonably could have concluded that the scope of the warrant was limited to materials supporting the allegations contained in the affidavit. Moreover, the same agent who prepared the affidavit and obtained the warrant also oversaw the execution of the warrant, a circumstance that was important to the Supreme Court's decision in *Sheppard*, where the Court held that it is appropriate to take account of the knowledge possessed by the officer or officers who execute the search warrant.[6] We conclude that the agents "took every step that could reasonably be expected of them" and that "a reasonable police officer would have concluded ... that the warrant authorized a search for the materials outlined in the affidavit." *Id.* at 989, 104 S.Ct. at 3428. *See, e.g., United States v. Anderson*, 851 F.2d 384, 387–89 (D.C.Cir. 1988) (agents reasonably relied on warrant as being limited by affidavit where warrant was defective because affidavit was not incorporated into it), *cert. denied*, 488 U.S. 1012, 109 S.Ct. 801, 102 L.Ed.2d 792 (1989); *see also United States v. Curry*, 911 F.2d at 78; *United States v. Luk*, 859 F.2d 667 (9th Cir.1988).[7]

## B. *The Sufficiency of the Evidence on the Wire Fraud Counts*

Appellant claims there was insufficient evidence to convict her on the two counts

and criminal statutes without more" are overbroad).

6. Testimony at the suppression hearing indicated that the agents who executed the warrant, led by the affiant, were guided in their search by the facts alleged in the affidavit.

7. Appellant also alleges that the agents who executed the warrant seized a number of documents and other items unrelated to the fraud scheme under investigation. Testimony at the suppression hearing conflicted on this matter, however, and we do not believe it was clearly erroneous for the district court to hold that the search was properly restricted in scope. Moreover, even if some documents unrelated to the fraud scheme were seized, the exclusionary rule does not require suppression of the remaining, properly seized material, absent evidence of "flagrant disregard for the limitations in a warrant." *United States v. Heldt*, 668 F.2d 1238, 1259 (D.C.Cir.1981), *cert. denied*, 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1982); *see also In re Search Warrant Dated July 4, 1977*, 667 F.2d 117, 130–33 (D.C.Cir.1981), *cert. denied*, 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 441 (1982). As just noted, we defer to the district court's holding that there was no such "flagrant disregard" of the warrant, at least when read in light of the affidavit.

of wire fraud charged against her.[8] Specifically, she asserts that (1) the wire transmissions alleged in the indictment were not made "for the purpose of executing" the scheme to defraud under 18 U.S.C. § 1343 because they did not occur prior to the fruition of, or bear a sufficient connection to, the scheme; (2) she violated no trust or fiduciary duty; and (3) no fraudulent scheme existed because no reasonable person would have believed appellant's misrepresentations. We reject all of these arguments.

■ The standard for overturning a guilty verdict on the grounds of insufficiency of evidence is a demanding one. A conviction should be reversed only where the evidence is such that, viewing it in the light most favorable to the government, a reasonable trier of fact could not have found guilt beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *United States v. Thomas,* 864 F.2d 188, 191 (D.C.Cir.1988). The evidence "need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." *United States v. Harrell,* 737 F.2d 971, 979 (11th Cir.1984), *cert. denied,* 469 U.S. 1164, 105 S.Ct. 923, 83 L.Ed.2d 935 (1985), 470 U.S. 1027, 105 S.Ct. 1392, 84 L.Ed.2d 781 (1985). No distinction is made between direct and circumstantial evidence in evaluating the sufficiency of evidence supporting a guilty verdict. *See Holland v. United States,* 348 U.S. 121, 139–40, 75 S.Ct. 127, 137–38, 99 L.Ed. 150 (1954); *United States v. Staten,* 581 F.2d 878, 882 (D.C.Cir.1978).

■ Wire fraud requires proof of (1) a scheme to defraud; and (2) the use of an interstate wire communication to further the scheme.[9] *See United States v. Pollack,* 534 F.2d 964, 971 (D.C.Cir.), *cert. denied,* 429 U.S. 924, 97 S.Ct. 324, 50 L.Ed.2d 292 (1976). The government offered substantial evidence—which appellant does not challenge in this appeal—that appellant engaged in a fraudulent loan scheme by misrepresenting to Robert Capuano and James Whatley by means of interstate wire communications that a large loan would be funded, proceeds of which would be divided among Capuano, Whatley, and a number of other interested borrowers, if the participants deposited certain advance fees into an escrow account controlled by appellant. She further misrepresented in communications over interstate wires that the funds would be refunded in full if the loan application was not successful; that she was the trustee for a group of off-shore lenders; and that the loans would be funded by these lenders. Finally, appellant's actions caused Whatley and Capuano to transfer funds into appellant's account via interstate wire.

Courts have had no difficulty in finding that fraudulent schemes of this type are encompassed by § 1343. *See, e.g., United States v. Lanier,* 838 F.2d 281, 283–84 (8th Cir.1988) (defendant represented to potential borrowers that he could obtain large loans for them; applicants were required to deposit certain advance fees into an escrow account, which fees would be returned if loans were not funded; loans were never funded and fees were not returned); *United States v. Brown,* 739 F.2d 1136, 1149 (7th Cir.1984) (defendant perpetrated fraudulent loan brokerage scheme involving payment of fees by borrowers for letters of credit to guarantee loans; loans were nev-

---

**8.** Because the elements that must be proved under the wire fraud statute, 18 U.S.C. § 1343, and under the mail fraud statute, 18 U.S.C. § 1341, are identical, we rely upon cases construing both statutes in the discussion that follows. *See United States v. Lemire,* 720 F.2d 1327, 1334–35 n. 6 (D.C.Cir.1983), *cert. denied,* 467 U.S. 1226, 104 S.Ct. 2678, 81 L.Ed.2d 874 (1984).

**9.** 18 U.S.C. § 1343 provided in full at the time as follows:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

er funded and advances were not returned), *cert. denied,* 469 U.S. 933, 105 S.Ct. 331, 83 L.Ed.2d 268 (1984); *United States v. Urban,* 746 F.2d 1345, 1346 (8th Cir.1984) (similar scheme perpetrated on farmers). The evidence presented by the government in this case amply supported the conclusion that appellant's fraudulent wire communications "occur[red] prior to the fruition of and [bore] a sufficient connection to the realization of the scheme to be considered as made for the purpose of executing the scheme." *United States v. Pollack,* 534 F.2d at 971 (applying *United States v. Maze,* 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974)).

■ This conclusion is not affected by the fact that an intermediary used by appellant was the person who actually entered into written agreements with the victims. The evidence clearly showed that appellant devised the scheme and furthered it by means of wire communications directly with the victims and indirectly via her intermediary. All that is required is that appellant have knowingly and willingly participated in the scheme; she need not have performed every key act herself. *See, e.g., United States v. Lanier,* 838 F.2d at 284 (evidence sufficient where defendant did not directly make misrepresentations to victims but did participate in scheme knowing it was fraudulent); *United States v. Wiehoff,* 748 F.2d 1158, 1161 (7th Cir.1984) (evidence need only show that defendant was a "knowing and active participant" in scheme to defraud and that scheme involved interstate wire communications).

■ Appellant's next argument, that she violated no trust or fiduciary duty, relies on the statement in *United States v. Lemire,* 720 F.2d 1327, 1335 (D.C.Cir.1983), *cert. denied,* 467 U.S. 1226, 104 S.Ct. 2678, 81 L.Ed.2d 874 (1984), that "[a]t the core of the judicially defined 'scheme to defraud' [under the wire fraud statute] is the notion of a trust owed to another and a subsequent breach of that trust." The specific scheme at issue in *Lemire,* however, grew out of the abuse of a fiduciary relationship between employer and employee, and the opinion does not address what level of trust

or type of relationship is required in fraudulent schemes of the type at issue in this case. As the results in *Lanier, Brown,* and *Urban, supra,* make clear, the establishment of a fraudulent loan scheme such as appellant devised here meets whatever level of trust is required. Appellant clearly held herself out as the trustee of the escrow account into which Whatley and Capuano deposited money and thus, by her own actions and representations, she assumed the responsibilities and duties attendant to such a position of trust. We conclude that her violation of that trust fully comports with the requirements of the wire fraud statute.

■ Appellant's final challenge to her wire fraud convictions is that no fraudulent scheme existed because no reasonable person would have believed her misrepresentations. Appellant is simply wrong, however, if she means to assert that the wire fraud statute does not apply where the persons defrauded unreasonably believed the misrepresentations made to them. In the words of one court, "it makes no difference whether the persons the scheme is intended to defraud are gullible or skeptical, dull or bright.... The only issue is whether there is a plan, scheme or artifice intended to defraud." *United States v. Brien,* 617 F.2d 299, 311 (1st Cir.1980) (collecting other cases holding similarly), *cert. denied,* 446 U.S. 919, 100 S.Ct. 1854, 64 L.Ed.2d 273 (1980). This circuit applies the same standard. *See Deaver v. United States,* 155 F.2d 740, 744–45 (D.C.Cir.1946) (in mail fraud prosecution, "the monumental credulity of the victim is no shield for the accused"), *cert. denied,* 329 U.S. 766, 67 S.Ct. 121, 91 L.Ed. 659 (1946); *United States v. Pollack,* 534 F.2d at 971 (to hold that actual loss to victim is required "would lead to the illogical result that the legality of a defendant's conduct would depend on his fortuitous choice of a gullible victim").

C. *The Sufficiency of the Evidence on the False Personation Counts*

■ Appellant challenges, finally, the sufficiency of the evidence supporting her conviction on the three charges of false

personation, alleging that she never held herself out as an "officer or employee" of the federal government as required by 18 U.S.C. § 912. We reject this claim as well.

The government's evidence, again uncontradicted by appellant, clearly showed that appellant represented herself in personal conversation, on her letterhead, and in correspondence and other documents as a "Special Consultant" to the United States Department of the Treasury in connection with the U.S. Recycle Program, a business appellant claimed to be running on behalf of, or in conjunction with, the Treasury Department. The evidence also indicated that the Treasury Department had never retained appellant in any capacity, nor had it authorized or had any dealings with the U.S. Recycle Program. Appellant's representations caused Charles Waggoner, Harold Gardner, and Leo Hansen—the three persons specifically mentioned in the false personation charges against appellant—to conclude that appellant was acting on behalf of and under the authority of the Treasury Department.

Specifically, appellant represented to Hansen that the U.S. Recycle Program was a top secret program created by the Treasury Department that was authorized to receive funds on behalf of the Treasury Department and to issue special Treasury Bonds. She represented to Gardner that the U.S. Recycle Program was a top secret program approved by the Treasury Department with authority to sell government commodities, with the proceeds going to the government. Finally, she represented to Waggoner that the U.S. Recycle Pro-

gram was set up to sell natural gas owned by the United States Government. Appellant also corresponded with these individuals using letterhead bearing an embossed seal and stating that she was a Special Consultant to the Treasury Department.

 The false personation statute, 18 U.S.C. § 912, makes it a crime to "falsely assume[ ] or pretend[ ] to be an officer or employee acting under the authority of the United States or any department, agency or officer thereof[ ] and act[ ] as such...." [10] Under 18 U.S.C. § 6, "agency" is defined as "any department, *independent establishment*, commission, administration, *authority*, board or bureau of the United States *or any corporation in which the United States has a proprietary interest* ..." (emphasis added). Even if the evidence was insufficient to establish that appellant claimed to be directly employed by the United States, we believe that, viewing the evidence in the light most favorable to the government, there was ample evidence establishing that, in her representations concerning the U.S. Recycle Program, appellant held herself out as an "officer or employee" of an independent establishment, authority, or proprietary corporation of the United States.[11]

 Appellant also asserts that the government was required to, but did not, plead and prove that she had an intent to defraud while falsely impersonating an officer or employee of the government. This circuit, however, clearly holds that intent to defraud does not have to be pleaded and proved under § 912. *See United States v. Rosser*, 528 F.2d 652 (D.C.Cir.1976).[12]

10. 18 U.S.C. § 912 provides in full:

Whoever falsely assumes or pretends to be an officer or employee acting under the authority of the United States or any department, agency or officer thereof, and acts as such, or in such pretended character demands or obtains any money, paper, document, or thing of value, shall be fined not more than $1,000 or imprisoned not more than three years, or both.

11. Appellant, of course, held a nonexistent office and claimed nonexistent authority, but the nonexistence of an office that a person pretends to hold is no defense to a prosecution under the false personation statute, *see United States v.*

*Rosser*, 528 F.2d 652, 656 n. 14 (D.C.Cir.1976), nor does it matter that the authority claimed by the personator is not actually possessed by any officer or employee of the United States. *Id.*

12. Six other circuits agree. *See United States v. Rose*, 500 F.2d 12 (2d Cir.1974), *vacated on other grounds*, 422 U.S. 1031, 95 S.Ct. 2648, 45 L.Ed.2d 688 (1975); *United States v. Wilkes*, 732 F.2d 1154 (3d Cir.), *cert. denied*, 469 U.S. 964, 105 S.Ct. 364, 83 L.Ed.2d 299 (1984); *United States v. Guthrie*, 387 F.2d 569 (4th Cir.1967); *United States v. Cord*, 654 F.2d 490 (7th Cir. 1981); *United States v. Robbins*, 613 F.2d 688 (8th Cir.1979); *United States v. Mitman*, 459 F.2d 451 (9th Cir.), *cert. denied*, 409 U.S. 863, 93

### III. CONCLUSION

We conclude that the search warrant used to search appellant's apartment was overbroad, but that suppression of the evidence seized is not required because the executing officers relied on the warrant's validity in objectively reasonable good faith. We reject appellant's arguments alleging that the evidence was insufficient to sustain her convictions on any of the counts charged against her. Appellant's convictions are therefore

*Affirmed.*

S.Ct. 154, 34 L.Ed.2d 111 (1972). *But see United States v. Randolph,* 460 F.2d 367 (5th Cir.1972).