**UNITED STATES of America,**

v.

**Mohinder I. SINGH, Derrick W. Washington, Defendants.**

**Criminal Nos. CR. 96–0105 (RCL), 96–0487 (RCL).**

United States District Court, District of Columbia.

April 25, 1997.

William Block, Asst. U.S. Atty., Jill Shellow, States Asst. U.S. Atty., Washington, DC, for U.S.

Ralph Caccia, Powell, Goldstein, Frazer & Murphy, Washington, DC, for Derrick Washington.

Gerald Feffer, James A. Bruton, Williams & Connolly, Washington, DC, for Mohinder I. Singh.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

This matter comes before the court on the several motions of defendants. Upon consideration of the parties' written submissions, oral arguments, and the relevant law, for the reasons set forth below, the court will deny each of defendants' motions.

### I. Facts

Mohinder Singh is the owner and operator of Professional Tax Service (Protax), an income tax return preparation and financial services business in Washington D.C. Derrick Washington is the office manager of Protax, as well as the business' only full-time employee. The Internal Revenue Service (IRS) began an investigation of Protax when Claude Bordelon, an informant, first told the agency that he believed Protax was preparing false returns for individuals. Bordelon was a former employee of Protax having worked there as one of several part-time tax preparers hired during the tax season. Based on this information, the IRS began an

**10**

investigation of Protax which included an undercover operation. The investigation lasted until Singh and Washington were indicted.

Singh and Washington were indicted by a federal grand jury on April 3, 1996. In count one of the indictment, Singh and Washington are charged with conspiring to defraud the United States for the purpose of impeding the lawful government functions of the IRS in violation of 18 U.S.C. § 371. Counts two through seventeen charge Singh and Washington with aiding and assisting in the preparation and presentation of false federal income tax returns to the IRS, in violation of 26 U.S.C. § 7206(2). Counts eighteen through twenty-two charge Singh and Washington with corruptly obstructing and impeding IRS audits in violation of 26 U.S.C. § 7212(a). In count twenty-three, Singh and Washington are charged with conspiracy to obtain property of more than $250 from financial and mortgage lending institutions in violation of 22 D.C.Code § 105(a). Count twenty-four charges Singh and Washington with bank fraud in violation of 18 U.S.C. § 1344 and 18 U.S.C. § 2(a) and (b). Counts twenty-five through twenty-eight charge Singh with tax evasion in violation of 26 U.S.C. § 7103. Counts twenty-nine and thirty charge Washington with failure to file individual federal income taxes in violation of 26 U.S.C. § 7203.

## II. Defendants' Motions to Suppress Evidence

Through separate motions, both Singh and Washington move the court to suppress the evidence seized by the government from the premises of Protax, 3121 Martin Luther King, Jr. Ave., S.E., Washington, D.C. Singh also asks the court to suppress the evidence seized from his residence at 8537 Old Dominion Drive, McLean, Virginia. Although the court agrees with defendants that the affidavit did not provide probable cause for the broad searches authorized by the warrants, the motions to suppress are denied because the court finds the officers acted in good faith reliance on the warrants, each of which was approved by a detached and neutral magistrate judge.

## A. Facts

IRS Special Agent Robert J. Van Shufflin provided the sworn affidavit used to support the requests for search warrants for both addresses. In the short, nine-page affidavit, Van Shufflin provided minimal information on the allegedly illegal activities at Protax. First, Van Shufflin stated that the IRS Criminal Investigation Division (CID) had learned from the Philadelphia Service Center that 98% of the returns prepared by Protax for the tax years 1989, 1990, 1992, and 1993 resulted in refunds as opposed to the national average of 75% reported by the IRS 1992 Annual Report. Second, Van Shufflin stated that a confidential informant provided CID with the information that Protax charges approximately $250.00 for the preparation of a tax return. Third, Van Shufflin described in great detail the interaction of an IRS undercover agent with Protax that led to the preparation of two sets of allegedly false tax returns.

## B. Analysis

Defendants challenge the warrants on two different, but necessarily related grounds. Specifically, defendants argue that the warrants are "general" warrants because they did not identify with particularity the places to be searched and the items to be seized. Additionally, defendants argue that the affidavit used to support the warrants did not establish probable cause for the searches.

The fourth amendment states that a search warrant must "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend IV. Thus, the fourth amendment prohibits "the general, exploratory rummaging [of] a person's belongings." *United States v. Maxwell*, 920 F.2d 1028, 1031 (D.C.Cir.1990). "By limiting searches 'to the specific areas and things for which there is probable cause to search, the [particularity] requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of wide-ranging exploratory searches the Framers intended to prohibit.'" *Id.*, quoting *Maryland v. Garrison*, 480 U.S.

79, 84, 107 S.Ct. 1013, 1016, 94 L.Ed.2d 72 (1987).

The D.C. Circuit has held that a search warrant may be construed with reference to the affidavit supporting it for purposes of meeting the particularity requirement. *Maxwell*, 920 F.2d at 1031. Because the Van Shufflin affidavit accompanied each warrant as an attachment, the court finds that it was properly incorporated, and will construe each warrant together with the affidavit.

■ Defendants argue that the warrants fail to describe in detail the places to be searched and the items to be seized. The court easily disagrees with defendants' characterizations. Both the office and the house are described by address on the first page of each warrant and by a detailed description attached to the warrants as Exhibit A. Furthermore, Exhibit B, referenced by and attached to each of the warrants, describes in fair detail the many records to be taken and thus left the executing officers with no discretion to determine what was and what was not included in the search. Cf. *United States v. Offices Known as 50 State Distributing Co.*, 708 F.2d 1371, 1374 (9th Cir.1983).

■ The court must next decide if authorization of such broad warrants was supported by probable cause. Defendants argue that Van Shufflin's affidavit fell far short of establishing probable cause for such broad warrants, and the court agrees. The effect of the warrants was that all of the business records of Protax could be seized and all of the financial documents of Singh could be seized from his home. Nothing in the affidavit supported a finding that all of these documents were used in illegal activity.

In examining the affidavit to see if it establishes probable cause for the broad searches, the court recognizes the proper standard of review is one of great deference to the magistrates' determination of probable cause. *United States v. Leon*, 468 U.S. 897, 914, 104 S.Ct. 3405, 3416, 82 L.Ed.2d 677 (1984). Roughly defined, probable cause exists "when known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that an offense has been or is being committed." *United States*

*v. Davis*, 458 F.2d 819, 821 (D.C.Cir.1972) (cites omitted). The probable cause requirement is not a rigid one, but rather, one based on common-sense. *Texas v. Brown*, 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983).

Even giving great deference to the decisions of the two magistrate judges, this court cannot conclude that the affidavit provided probable cause for the broad searches authorized by the search warrants. The information simply falls far short.

The government argues that the statistical evidence showing that 98% of the returns prepared by Protax resulted in refunds is sufficient. The court cannot agree as the affiant made no attempt to put the numbers given to the magistrate judges into a relevant context or to provide the magistrate judges with any information so that the one statistic would be meaningful.

Similarly, the fact that the average charge for a return prepared by Protax is $250 provides absolutely no basis for determining that Protax is permeated with fraud. The affiant failed to give any additional information that would place this number in context or help to explain why this average charge is indicative of fraud.

The only remaining information provided by Van Shufflin is the detailed description of the undercover agent's interaction with the two defendants which led to the preparation of two sets of allegedly false returns. Defendants argue that Van Shufflin's description was misleading in that he did not adequately portray the events as evidenced by the tape recordings. Having reviewed the tape transcripts submitted by defendants, the court believes that the description is in fact accurate. However, this one event is not sufficient for a finding of probable cause to support the seizure of all business records at Protax or all the records from the Virginia residence.

It is true that courts have recognized the problems officers face when preparing affidavits in support of search warrants for business records. Often it is not possible to distinguish between records that would provide evidence for the alleged crimes from

those that would not. Thus, it may be difficult to write a sufficiently particular warrant for the documents for which there is probable cause to seize. To address these problems, courts have allowed more general warrants to proceed when applicants for warrants can either show probable cause to believe that more detailed descriptions are not possible, or by showing probable cause to believe that the entire business is permeated with fraud. *United States v. Diaz,* 841 F.2d 1, 4 (1st Cir.1988) ("seizing business records in a fraud investigation presents special problems for investigators attempting to draft warrants"), *Offices Known as 50 State Distributing Co.,* 708 F.2d at 1374 (concluding that it was impossible through a more particular description to segregate the business records that would be evidence of the alleged crime from those that would not be evidence).

No where in his affidavit did Van Shufflin allege that Protax was permeated with fraud. Nor did he state that he was unable to more particularly describe the papers. More importantly, he did not provide either magistrate judge with sufficient information that would allow them to draw this conclusion on their own.

To better understand the insufficiency of the affidavit, it helps to compare it with others which the courts found establish probable cause to believe that a business was permeated with fraud or illegality. For example, in *United States v. Brien,* the magistrate judge relied upon numerous affidavits to find probable cause. 617 F.2d 299 (1st Cir.1980). In one affidavit, the affiant described his analysis of the complaints of seventy-five customers, interviews with twenty former employees, and his review of other files. He described the operations of the company in great detail. Additionally, a second affiant described the more than 170 complaints that his office had received and described a practice of fraud just like the one described by the first affiant. Thus, the court concluded that "the two hundred-fifty complaints that surfaced could fairly be inferred to be only the tip of the iceberg." *Id.* at 307.

Similarly, in *Offices Known as 50 State Distributing Co.,* the search warrant was issued on the basis of a twenty-seven page affidavit in which information had been provided by a private investigator who had gained employment with the company, by the manufacturers the company had falsely claimed to represent as well as by several victims of the company's fraudulent conduct. 708 F.2d at 1372. The private investigator had enrolled in a one week training course offered by the company and had observed and overheard at least seven of the company's salesmen at work. Because of his investigation, he was able to describe in detail the day to day fraudulent operations of the company with support from numerous complainants and victims.

As stated before, the affiant in this case made no allegations that Protax was permeated with fraud or that he was unable to more particularly describe the papers and he did not provide the magistrate judges with sufficient information that would allow them to draw either conclusion on their own.

■ Despite having concluded that there was no probable cause to justify such broad warrants, the court will not order suppression of the evidence because the agents in this case reasonably relied on the warrants in good faith. "[T]he exclusionary rule should not be applied to exclude evidence seized pursuant to a defective search warrant if the officers conducting the search acted in 'objectively reasonable reliance' on the warrant and the warrant was issued by a detached and neutral magistrate." *Maxwell,* 920 F.2d 1028, 1034, citing *Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 and *Massachusetts v. Sheppard,* 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984).

Following the Supreme Court's guidance in *Leon,* courts have refused to apply the good faith exception in two situations. First, the Supreme Court limited the use of the good faith exception to facially-valid warrants. Thus, if a court concludes that a warrant is so defective that it is facially invalid, the necessary conclusion is that no reasonable police officer could have relied on the warrant believing that it was properly issued. Here, the warrants were facially valid in that each described with particularity the places to be searched and the items to be seized.

Second, courts will not find good faith when there is evidence of improper conduct on the part of the officers who applied for the search warrant. For example, in *United States v. Reilly,* the Second Circuit concluded that the good faith exception did not apply because the officers who prepared the affidavit in support of the search warrant recklessly failed to provide the magistrate judge with all of the appropriate information. 76 F.3d 1271, 1279 (2nd Cir.1996). The court concluded that the description of the land to be searched was minimal and "almost calculated to mislead." *Id.* Additionally, the officers failed to tell the magistrate judge that they had learned of most of the information included in the affidavit through an earlier search that the court concluded was most likely illegal. Because of these acts, the court concluded that the officers had acted recklessly by not providing information that was "clearly critical" to a determination of the legality of the search. *Id.*[1]

Neither of these situations is present in this case, and the court concludes that the good faith exception applies. As stated before, the warrant is facially valid in that it describes with particularity the places to be searched and items to be seized. Furthermore, there is no evidence of any misconduct on the part of the officers in applying for the search warrant or in executing the warrant. The evidence indicates that the agents and officers reasonably believed the warrant was based on a valid application of the law to the known facts. For these reasons, defendants' motions for suppression are denied.

### III. Defendants' Motions to Suppress and Exclude the Statement of Washington

#### A. Facts

On December 20, 1993, IRS–CID Special Agents Whites, Jefferson, and Van Shufflin

executed a search warrant at Protax. As they entered Protax, the special agents encountered Washington and presented to him their authority to execute the search warrant. Washington was the only person in the offices, and Agent Whites escorted Washington to a chair. Agent Van Shufflin told Washington that the offices were closed, and informed Washington that he was allowed to leave. Washington, however, expressed a desire to stay.

Washington then accompanied Van Shufflin and Whites to the CID facility located at 500 North Capitol Street. After reading the IRS Advice of Noncustodial Rights to Washington, an interview was begun with both agents present. Van Shufflin started out asking the questions, but soon Whites became the primary questioner and Van Shufflin the primary note taker. The morning session, which ended when the individuals broke for lunch, was not tape recorded. The afternoon session was tape recorded, except for a brief period when Agent Carter came in at the end.

#### B. Analysis

Both defendants have individually moved the court to suppress or exclude Washington's statement. The court will first consider Washington's motion to suppress on the grounds that the statement was the result of a custodial interrogation during which he was never told of his several constitutional rights. In response, the government counters by arguing first that Washington was never in the custody of the CID–IRS and second that he was in fact told of his rights.

■ The court agrees with the government that the defendant was never in custody, and thus the statement was not the re-

---

1. The court notes that the affidavit did not provide the magistrate judges with all known information in this case as there was only one reference to the information provided by Claude Bordelon, the confidential informant. Given the circumstances, the court concludes that this is evidence of the good faith of the officers. If all of the information Bordelon had given to the government had been determined to be reliable,

and had been included in the affidavit, there would have been probable cause for the magistrate judges to conclude that a pervasive scheme of fraud existed at Protax. Under the circumstances, the court can only conclude that there was a determination that Bordelon was not necessarily reliable, and the court will not penalize CID for not presenting the information he provided to the magistrate judges.

sult of a custodial interrogation. As noted by the Supreme Court, "the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *Stansbury v. California*, 511 U.S. 318, 323, 114 S.Ct. 1526, 1529, 128 L.Ed.2d 293 (1994). Furthermore, "a court must examine all of the circumstances surrounding the interrogation, but 'the ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *Id.* quoting *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977).

The uncontradicted testimony of Agents Van Shufflin and Whites is that upon execution of the search warrant at Protax, Washington was told that the offices were closed, and that he was free to leave. Washington was asked if he would like to give a statement, and he agreed to accompany the agents to the CID facility. Neither agent remembered Washington asking for any of his personal effects. After the morning interview, Washington left, on his own, for lunch, and returned for further questioning.

Considering all of these circumstances, there is no support for Washington's contention that he was in custody at the time of the statement. He had been told he was free to leave, and he in fact left for lunch only to return on his own accord. The fact that he accepted the ride offered by the special agents is not enough to justify a finding that he was in custody. For these reasons, defendant Washington's motion to suppress the statement is denied.

█ The court will next address the motion of defendant Singh to exclude Washington's statement pursuant to *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). The government having proposed a redacted statement, Singh now argues that even though all direct references to Singh have been removed, the redacted statement still creates an inevitable association between Washington's activities and Singh because of the references to Protax.

Thus, Singh argues that its admission would still violate *Bruton.*

In *Bruton v. United States*, the Supreme Court held that the admission of a non-testifying co-defendant's confession that incriminates the defendant deprives him of his Sixth Amendment right to confront the witnesses against him, notwithstanding a jury instruction limiting the confession's use. This Confrontation Clause problem arises if one defendant's statement "expressly implicat[es]" another defendant. *Bruton*, 391 U.S. at 124, n. 1, 88 S.Ct. at 1621, n. 1. As recognized by the D.C. Circuit, "in this circumstance even a judge's limiting instruction is not deemed sufficient to prevent the jury from using the co-defendant's statement improperly against the defendant." *United States v. Applewhite*, 72 F.3d 140, 145 (D.C.Cir.1995). However, this "applies only to 'facially incriminatory' confessions, as distinguished from statements that become incriminatory only when associated with other evidence at trial." *Id.*, citing *Richardson v. Marsh*, 481 U.S. 200, 206–08, 107 S.Ct. 1702, 1706–08, 95 L.Ed.2d 176 (1987).

After *Bruton*, courts dealt with statements implicating co-defendants by either permitting redacted versions of the co-defendant confession or by excluding the confession altogether. In *Richardson v. Marsh*, 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987), the Supreme Court sanctioned the redaction approach when the confession was redacted to eliminate both the defendant's name as well as any reference to his or her existence. *Id.* at 211, 107 S.Ct. at 1709. Furthermore, while not addressing whether or not using personal pronouns would be permissible, the Supreme Court did hold that *Bruton* does not require the suppression of a statement which is redacted to omit any reference to the defendant, but the defendant is still linked to the confession by other evidence. *Id.*

Applying this law to the facts, the court concludes that the statement does not need to be excluded. Every single reference to Singh has been removed from the confession, including even the fact that Singh owns Protax and is the supervisor of Washington. Absolutely nothing in the confession alone

links the admitted activities of Washington with his co-defendant Singh.

Singh argues that because he is the sole proprietor of Protax, Protax has no separate legal identity from Singh and that all references to Protax in Washington's statement must be construed as indirect references to Singh. The court rejects this argument because statements that are not facially incriminatory, but only become incriminatory through the introduction of other evidence are not covered by *Bruton*. Washington's statement in no way connects Singh with Protax as all references to Singh have been removed. It is only through other evidence that Singh's relationship with Protax will be revealed. For this reason, defendant Singh's motion to exclude the statement is denied.

■ Finally, the court must address Washington's motion to exclude the redacted statement. The District of Columbia Circuit has stated that redacted statements must be excluded "where admission of the statement in its edited form distorts the meaning of the statement or excludes information substantially exculpatory of the defendant." *United States v. Washington*, 952 F.2d 1402, 1404 (D.C.Cir.1991). Because the redacted version of the confession neither distorts the meaning of the confession nor excludes exculpatory information, the court will deny Washington's motion.

The confession, in both its complete and its redacted form, is an admission of Washington that he prepared false tax returns knowing that what he was doing was wrong. Taking out references to Singh's involvement in Washington's conduct does not distort the character of the confession nor does it eliminate any exculpatory information. A defendant's conduct is no less culpable because of the culpable conduct of a third party. For these reasons, defendant Washington's motion to exclude the redacted statement is denied.

## IV. Defendants' Joint Motion to Dismiss Indictment for Abuse of Grand Jury

■ Defendants have moved the court to dismiss the indictment for abuse of the grand jury. Defendants argue that Special Agent Mary Francis Martin, testifying as a summary witness before the grand jury, misled the grand jury to such an extent that the grand jury's impartiality was taken away. The court rejects defendants' argument for two reasons. Most importantly, the court disagrees with defendants' characterization of Martin's testimony as misleading. Defendants state that Martin created the false impression that when defendants prepared the allegedly false tax return for the undercover agent, the false information originated with defendants as opposed to having been suggested by the agent. Having examined the grand jury transcripts, the court disagrees that Martin left the jury with any impression about who suggested the numbers which constitute the false information. In contrast, she simply testified that defendants were very willing to prepare the false returns, without any reference to who created the actual numbers. Additionally, having examined the transcripts from the tape recordings, the court does not believe they indicate that it was the undercover agent who suggested the numbers to be used. For example, during one meeting, the transcripts show defendant Singh placing a telephone call in which he asks a person, whom he claims is a mortgage broker, what income the undercover agent would need in order to qualify for property of a certain price. Transcript of 10/07/93 submitted by defendants' as Exhibit D to the Motion to Suppress Evidence Seized. Thus, the court disagrees that the testimony of Martin left the grand jury with the impression that the allegedly false numbers were provided by defendants. But, even if she had left them with such an impression, it would not have been an inaccurate impression.

Defendants also point to the Martin misrepresentation concerning the IRS's relationship with Claude Bordelon, a confidential informant on the case. When asked about any previous relationship between Bordelon and the IRS, Martin mistakenly said that there was no such relationship. In fact, Bordelon had filed an application for reward with respect to another taxpayer. The government does not, and in fact could not, argue that her statement was not wrong. But, the government does correctly argue that this

incorrect statement does not even come near the high standard of misconduct required for an indictment to be dismissed, even using the test urged by defendants.

■ As defendants state, courts do not look to the "degree of culpability" when determining if a defendant's Fifth Amendment right to an independent grand jury has been violated, but instead at the impact of the "misconduct on the grand jury's impartiality." *United States v. Sears, Roebuck & Co.*, 719 F.2d 1386, 1391 (9th Cir.1983). Even if the misstatement of Martin could be characterized as misconduct, there is no support for a conclusion that the one misstatement affected the independence or impartiality of the grand jury. On the same day as the misstatement, in response to a later question, Martin told the grand jury that Bordelon had applied for a reward for the information he had provided regarding Singh and Washington. Thus, the grand jury had knowledge of the possibility that Bordelon stood to gain from the information he was providing regarding Singh and Washington. This information is much more suggestive of bias than his request for a reward in an unrelated matter.

More importantly, the impact of this one statement, if there was any impact at all, would necessarily have been minuscule given the large number of witnesses presented to the grand jury. In the first grand jury, the government presented thirty-four other witnesses, and in the second grand jury, which resulted in two technical corrections to two counts of the original indictment, the government presented four additional witnesses.

For these reasons, the court denies defendants' joint motion to dismiss the indictment for grand jury abuse.

## V. Defendants' Joint Emergency Motion for an Order Barring Improper Use of IRS Civil Audits for Criminal Discovery Purpose

■ Defendants have moved the court to bar all improper use of IRS civil audits for criminal discovery purposes. Defendants allege that the IRS conducted civil audits for the purpose of obtaining evidence to be used in the criminal proceedings against both defendants. The court concludes that there is no evidence that the civil audits were undertaken for an illegal or improper purpose. As a result, defendants are not entitled to any relief.[2]

In their joint motion, defendants make many allegations that went unsupported by the testimony at the motions hearing. Specifically, defendants first stated that many of the initial audits were attended by the IRS criminal investigators who handled the investigation leading up to the indictment. However, the testimony presented at the hearing does not support this factual assertion. IRS Special Agent Sandy Carter's uncontradicted testimony was that she attended one civil audit. Her attendance was not by her own initiative, but was requested by Faye Knights and Joe Kwiec, two employees from the Civil Examination Branch. Knights was uncomfortable with the circumstances of a particular audit because she had learned that defendant Singh was planning to attend. Carter spoke with Singh before the audit to inform him that she was going to be attending, and to inform him of his rights. Carter asked no questions during the audit, and after it was over told both Kwiec and Knights that she would not sit in on any more audits because she did not think it was necessary or appropriate. Thus the only evidence before the court is that Carter attended one civil audit, at the request of two people from the Civil Examination Branch. During the audit she asked no questions, and afterwards informed those in the civil examination branch that she was not willing to attend any future audits.

Second, defendants stated that the IRS criminal investigators who handled the investigation leading to the indictment worked extensively with and directed the activities of the IRS civil auditors. While it is true that Carter did work with the civil examiners

---

**2.** Initially, defendants moved the court for an order barring the IRS from conducting any additional civil audits until after the case had been completed. At the motions hearing, defendants limited their request to an order that would suppress all evidence obtained from the civil audits.

during the audit process, the record does not support a finding that she or any other person from CID directed the activities of the civil auditors. It is undisputed that there was contact between Carter and a couple of members of the civil examination branch. Additionally, CID was told by the U.S. Attorney's office to not audit two distinct groups of taxpayers as well as requests for a certain number of audits.[3] But, as stated below, the testimony of several witnesses was that no one from CID selected the persons to be audited. Additionally, Susan Clasen, group manager for the team performing the civil audits, testified that no one from CID suggested questions that should be asked at any of the audits.

Third, defendants stated that the IRS criminal investigators determined which Protax clients and employees would be audited and decided whether civil penalties would be imposed on the individuals audited. Again, while it is true that the civil examiners were told to not audit police officers or those with duplicate filings, the unequivocal statement of Carter was that at no time did she select the taxpayers to be audited. This testimony was corroborated by the statements of Raynetta McCormick, the return preparer coordinator whose job was to select the taxpayers who would be audited. Additionally, Clasen stated that the policy of not imposing civil penalties while there is an on-going criminal investigation was a long standing policy, not a policy that was initiated for this case.

Fourth, defendants assert that the IRS's internal, undisclosed purpose for conducting the tax preparer audits was to develop evidence for the criminal case against defendants and to develop tax loss numbers for sentencing guidelines purposes. Again, the evidence before the court does not support this statement. As Richard Toskes, Chief of Examination Branch II, stated, the goal of the civil investigation branch is to collect money that is due to the government, not develop evidence for criminal investigations.

Because of the different functions of the criminal and civil divisions, it is not uncommon for joint investigations to occur. Additionally, joint investigations can be initiated by either the criminal investigation division or the civil examination branch. The fact that the criminal investigation division requested that a certain number of audits be done in order to meet certain criteria does not change the purpose or focus of the audits.

The record presented by defendants does not support a finding that the civil audits were conducted for the purpose of criminal discovery or for the developing of witnesses. Defendants wish to rely on a few comments taken out of context from many pages of documents. In light of the testimony provided to the court, the court concludes that these isolated comments demonstrate a lack of understanding of the process on the part of the writer, not an improper motive. Thus, despite the interaction between the civil and criminal branches, the court concludes that there was no attempt of the criminal division to either direct or use the civil audit process for improper discovery or for the influencing of witnesses. Thus, defendants are not entitled to any relief.

Defendants also asked the court to order the government to turn over to defendants all of the information obtained through the civil audits. Since the motion, the government agreed to provide this information. Thus, defendants' request is denied as moot.

## VI. Defendants' Joint Motions for Severance

In two joint motions, defendants ask the court to sever the counts alleging conspiracy to defraud financial institutions and bank fraud as well as the counts alleging tax evasion and failure to file taxes from the tax conspiracy and substantive tax charges. The defendants first argue that the counts are misjoined under Rule 8 of the Federal Rules

---

**3.** In May of 1995, Susan Clasen prepared a memorandum in which she wrote "[y]esterday we were instructed by the U.S. Attorney's office to not examine any returns involving D.C. Police Officers." Exhibit A–18 attached to Memorandum in Support of Motion for Order Barring Improper Use of IRS Civil Audits. The U.S. Attorney's office concedes that it made this request. The court finds this instruction both disturbing and troubling, but finds that it does not afford any relief to these defendants.

of Criminal Procedure. In the alternative, defendants ask that the court use its discretion under Rule 14 of the Federal Rules of Criminal Procedure to sever the counts because of the possibility of prejudice to defendants.

## A. Rule 8(b)

 As recognized by defendants, but not by the government, it has long been held in this circuit that " 'the propriety of joinder in cases where there are multiple defendants must be tested by Rule 8(b) alone and . . . Rule 8(a) has no application.' . . . Thus in this case of multiple defendants, even where the joinder of counts is at issue, Rule 8(b) applies." *United States v. Brown*, 16 F.3d 423, 427 (D.C.Cir.1994)(citing *United States v. Jackson*, 562 F.2d 789, 794 (D.C.Cir.1977)). See also *United States v. Halliman*, 923 F.2d 873, 883 (D.C.Cir.1991). Therefore, for offenses to be properly joined the offenses must belong to "the same act or transaction or in the same series of acts or transactions." Fed.R.Crim.P. 8(b).

The court has no trouble concluding that all of the charged offenses are in the same series of acts or transactions. Counts twenty-three and twenty-four charge the defendants with conspiracy to defraud financial institutions and with bank fraud. Despite the attempts of defendants to characterize these charges as unrelated, the very same conduct forms the basis of these two charges and the tax conspiracy and substantive charges. Taking the case as a whole, the government has alleged that defendants ran a tax preparation business where the activity centered around the filing of false tax returns with both the IRS and different mortgage lenders. For these allegedly illegal activities, defendants were able to charge their clients higher fees for their services. Hence, the alleged overall scheme involved the preparing of false tax returns for financial reward.

Because of this, the court has no problem concluding that there exists a "logical relationship between the acts or transactions," *United States v. Perry*, 731 F.2d 985, 989 (D.C.Cir.1984), evidenced by "a consistent, logically interlocked set of goals." *United*

*States v. Hubbard*, 474 F.Supp. 64, 86 (D.D.C.1979). The consistent goal of the alleged scheme was financial reward through the preparation of false tax returns, without question a logically connected enterprise.

Similarly, counts twenty-five through twenty-eight charge Singh with filing of false tax returns for himself and his wife and counts twenty-nine and thirty charge Washington with failure to file tax returns. As recognized even by defendants, the charges involve the income earned by each defendant as a result of the alleged criminal activities at Protax. Courts have recognized that counts charging individual defendants with tax evasion can be properly joined under Rule 8(b) when the revenue on which the tax was evaded resulted from the criminal conduct charged in the non-tax counts. *United States v. Biaggi*, 909 F.2d 662, 676 (2nd Cir.1990). Therefore, defendants' joint motion is denied.

## B. Rule 14

 The court will not exercise its discretion to sever any of the counts from the tax conspiracy and substantive charges. Rule 14 provides that "[i]f it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires." Fed.R.Crim.P. 14.

The Supreme Court has recognized a preference in the federal system for joint trials of defendants indicted together for reasons of efficiency and the promotion of consistent verdicts. *Zafiro v. United States*, 506 U.S. 534, 537, 113 S.Ct. 933, 937, 122 L.Ed.2d 317 (1993). Thus, the Supreme Court held that a district court should grant a severance "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539, 113 S.Ct. at 938. Often, even if there is a chance of prejudice, other options besides severance, for example limiting instructions, will cure any problems. *Id.*

Defendants focus their request for a severance under Rule 14 on the assertion that the jurors may cumulate and corroborate the evidence from the tax conspiracy and substantive charges with the bank fraud and conspiracy to defraud financial institutions charges. The court rejects this assertion for several reasons. First, the court believes that defendants failed to demonstrate why the evidence will confuse a jury. While many counts are involved, this alone is not sufficient to reach the conclusion that the jurors will cumulate the evidence. The fact that the counts are related, and the underlying conduct the same, does not mean that cumulation will necessarily occur. Here, the counts are distinct, and the court believes the government's evidence will be both simple and distinct. *Baker v. United States*, 401 F.2d 958, 974 (D.C.Cir.1968). Furthermore, defendants have completely failed to demonstrate why limiting instructions to the jury will not cure any potential problems. Jurors are presumed to follow the instructions of the court, and as stated above, the Supreme Court has recognized that in most cases, instructions will cure any possible harm. Defendants fall far short of establishing that this is not a case in which instructions will suffice.

Additionally, defendants' argument is necessarily premised upon a belief that the evidence of the different charges would not be allowed in at separate trials. Although a definitive ruling on 404(b) evidence is not appropriately made at this time, the court finds it most likely that the evidence of the different offenses would be admissible at the separate trials for the purposes of proving intent, plan, and knowledge. Fed. Rule of Evid. 404(b).

Finally, defendants state very briefly that they may wish to testify regarding only certain allegations and not others. This hesitant assertion is not adequate to demonstrate that lack of a severance will compromise a specific trial right of either defendant. In order to receive a severance because of a desire to testify, a defendant must present the trial court with "enough information—regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other—to satisfy the court that the claim of prejudice is genuine." *Baker*, 401 F.2d at 977. Defendant Washington has been provided a copy of his redacted statement, and has been in a position to make a decision on whether or not to testify.

Therefore, the court finds that defendants have failed to carry their burden of showing why the court should exercise its discretion under Rule 14. For this reason, the motions to sever are denied.

## VII. Defendant Washington's Motion for a Change in Venue

Washington has moved this court to dismiss counts twenty-nine and thirty for lack of venue. Counts twenty-nine and thirty charge Washington with failure to file individual federal income taxes in violation of 26 U.S.C. § 7203. According to defendant, Washington resides in the District of Columbia and was required to file tax returns in either Baltimore, Maryland or at the Philadelphia, Pennsylvania Service Center. Thus, any resulting crime from failing to file was committed in either the judicial district for Baltimore, Maryland or Philadelphia, Pennsylvania.

Defendant Washington, however, is wrong. The case law since the Treasury regulations were amended to provide for filing by hand-carrying of returns to a "local office constituting a permanent post of duty within the internal revenue district of such director," Treas. Reg. § 1.6091–2(d); T.D. 7495 (Jun. 29, 1977), consistently holds that venue is proper in the residence of the taxpayer. *United States v. Hicks*, 947 F.2d 1356, 1360–61 (9th Cir.1991); *United States v. Garman*, 748 F.2d 218, 219–221 (4th Cir. 1984), cert. denied, 470 U.S. 1005, 105 S.Ct. 1361, 84 L.Ed.2d 382 (1985). As pointed out by the government, three of the cases relied upon by Washington predate the 1977 amendments. The fourth case affirms the conclusion of this court by observing that "[f]ailure to file a tax return is an offense either at the defendant's place of residence, or at the collection point where the return should have been filed." *United States v. Clinton*, 574 F.2d 464, 464 (9th Cir.1978).

Thus, defendant Washington's motion is denied.

## VIII. Conclusion

For the stated reasons, each of defendants' motions is denied. A separate order shall issue today.

