IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JOSE TERREROS, | § | |
| | § | No. 435, 2022 |
| Defendant Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID No. N1911014417 (N) |
| STATE OF DELAWARE, | § | |
| | § | |
| Appellee. | § | |

Submitted: October 25, 2023
Decided: January 18, 2024

Before **SEITZ**, Chief Justice; **VALIHURA**, **TRAYNOR**, **LEGROW**, and **GRIFFITHS**, Justices, constituting the Court *en Banc*.

Upon appeal from the Superior Court of the State of Delaware. **REVERSED AND REMANDED.**

Elliot M. Margules, Esquire, Office of the Public Defender, Wilmington, Delaware, *for Appellant Jose Terreros.*

Andrew J. Vella, Esquire, Delaware Department of Justice, Wilmington, Delaware, *for Appellee State of Delaware.*

**LEGROW**, Justice:

In 2019, Andrea Casillas-Ceja ("Casillas") left her children in the care of her boyfriend, Jose Terreros. When Casillas returned home, her four-year-old daughter, J.S., informed her that Terreros had licked her vagina. Casillas immediately told Terreros to leave the home and called the police. A few days later, Casillas accessed the internet search history on Terreros's phone, which he had left at her house. Within the phone's internet history, Casillas observed several web searches that the State contended were evidence of his guilt. Specifically, Terreros had searched how long saliva and fingerprints stay on bodies and clothes and whether police can detect if a little girl has been raped.

Investigators obtained a warrant to search Terreros's phone based on Casillas's observations. Although the only nexus between the alleged crime and the phone was Terreros's internet history, the warrant authorized police to search Terreros's messages, messaging apps, photos, videos, internet search history, GPS coordinates, and incoming and outgoing calls. The warrant did not identify any dates limiting the scope of the search. Terreros moved to suppress the fruits of the search, arguing that the warrant was a general warrant that authorized a search of far more data than police had probable cause to search.

After the Superior Court denied Terreros's motion, finding that the warrant was neither general nor overbroad, the State introduced the web searches at Terreros's trial for Rape First Degree, Sexual Abuse of a Child in the First Degree,

1

and Dangerous Crime Against a Child. Ultimately, the jury returned a verdict finding Terreros not guilty of Rape First Degree but guilty of the other two counts.

Following the verdict, Terreros moved for judgment of acquittal, contending that the verdicts were inconsistent, and that this inconsistency violated the protections afforded within Article I, Section 4 of the Delaware Constitution. The Superior Court denied Terreros's motion but did not specifically address his state constitutional claim.

Terreros now appeals his convictions, arguing that the Superior Court abused its discretion in refusing to suppress the internet search history and erred in denying the Motion for Judgment of Acquittal. Because the warrant constituted a general warrant, we REVERSE and REMAND the Superior Court's denial of Terreros's Motion to Suppress. Because both the Superior Court and the State did not address the state constitutional aspect of Terreros's inconsistent-verdicts argument, we REMAND the Superior Court's denial of Terreros's Motion for Judgment of Acquittal for further consideration of the constitutional issues raised therein.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In 2019, Terreros lived with Casillas, their two children, and three of Casillas's children from another relationship.[1] On November 19, 2019, Casillas and

---

[1] App. to Opening Br. at A249; A269; A350 (Trial Tr.).

Terreros spent the day at a farm in Pennsylvania with all the children.[2] That night, Casillas went to the local 7- Eleven to buy water for Terreros.[3] Terreros later stated that Casillas was likely gone for no more than five to ten minutes.[4] When Casillas returned, J.S., her four-year-old daughter, told her that Terreros had licked her "cola," which was the word she used to mean vagina.[5] Casillas immediately took her children outside and told Terreros to leave the house.[6] Terreros left the home as requested.[7] Casillas called the police and took J.S. to a hospital where she was examined by a forensic nurse. J.S. also provided a recorded statement at the children's advocacy center ("CAC").[8]

A few days later, after police interviewed Terreros in connection with J.S.'s statement, Terreros called Casillas and asked her to call his supervisor from his phone, which he had left at their home.[9] Casillas agreed to do so. After making that call, Casillas looked through Terreros's internet search history and found—in Spanish—searches translating to "how to detect if a little girl has been raped," "how

---

[2] *Id*. at A282; A352 (Trial Tr.).

[3] *Id*. at A272–73 (Trial Tr.).

[4] *Id*. at A354 (Trial Tr.).

[5] *Id*. at A272-73 (Trial Tr.).

[6] *Id*. at A273; A276; A356 (Trial Tr.).

[7] *Id*. at A273; A356 (Trial Tr.).

[8] *Id*. at A273 (Trial Tr.).

[9] *Id*. at A275-76 (Trial Tr.).

long saliva stays on a body," and "how long fingerprints stay on clothes/sheets/blankets."[10]  Casillas reported this finding to police, and Officer Jay Davidson obtained a warrant for Terreros's cell phone based on what Casillas saw.[11]  The warrant application stated, in pertinent part:

> Your affiant was advised by [Casillas] that she responded to [her front yard] where she located [Terreros's cell phone].  [Casillas] advised that she proceeded to check the search history and found pornography, a search of how to detect if a little girl has been raped, how long saliva stays on the body, and a search of how long fingerprints stay on clothes/sheets/blankets.[12]

The application sought a search warrant for dates between "11/19/19-11/23/19."[13]  The application and affidavit, attached to the warrant, sought authorization to search "[a]ny and all messages, any and all messaging apps, all search history, all photographs, videos, GPS coordinates, incoming and outgoing calls from November 18, 2019, to November 23, 2019."[14]

On November 23, 2019, the Justice of the Peace Court approved a warrant to search the following data on Terreros's phone, "[a]ny and all messages, any and all messaging apps, all search history, all photographs, videos, GPS coordinates, incoming and outgoing calls used or intended to be used for Rape 2nd by person of

---

[10] *Id*. at A122 (Warrant Application); App. to Opening Br. at A276–82 (Trial Tr.).

[11] *Id*. at A119 (Warrant).

[12] *Id*. at A122 (Warrant Application).

[13] *Id*.

[14] *Id*. at A120 (Warrant Application and Affidavit).

4

Authority."[15]   The warrant the court approved did not contain any temporal limitation.

In December 2019, Detective Steven Burse of the New Castle County Police Department used Cellebrite software to extract and search the data on Terreros's phone.[16]  The resulting download included 29 gigabytes of videos, pictures, audio files, search history, and GPS coordinates.[17]  The extraction included more than 3,000 videos and more than 60,000 pictures.[18]

On February 17, 2020, Terreros was indicted on one count each of Unlawful Sexual Contact First Degree, Sexual Abuse of a Child by a Person in a Position of Trust, Authority, or Supervision Second Degree, and Dangerous Crime Against a Child.[19]

On March 3, 2020, the State provided Terreros with requested discovery, including the extraction report from the cell phone search.[20]  The report included internet searches from November 20 and 22 and 1,031 GPS coordinates.[21]  The internet searches, in Spanish, matched those that Casillas had reported seeing.

---

[15] *Id.* at A119 (Warrant).

[16] *Id.* at A212; A286–88 (Trial Tr.).

[17] *Id.* at A215–17 (Trial Tr.).

[18] *Id.*

[19] *Id.* at A1 (Superior Court Docket); Superior Court D.I. 3 (Indictment).

[20] App. to Opening Br. at A14 (DOJ Discovery Response Letter).

[21] *Id.* at A16–20 (Extraction Report).

In March 2021, Terreros moved to suppress the fruits of the search, arguing that the warrant lacked sufficient particularity as to the types of data it authorized police to search and that it lacked any temporal limitation.[22]  Terreros likened this search to the "top-to-bottom" cell phone search warrants that this Court previously has found to be lacking in particularity.[23]  The State's response to the Motion to Suppress maintained that the warrant contained a temporal limit and a sufficient nexus existed between the probable cause alleged in the affidavit and the categories of data for which the warrant authorized a search.[24]

While the Motion to Suppress was pending, the State re-indicted Terreros on May 10, 2021, charging him with one count each of Rape First Degree, Sexual Abuse of a Child by a Person in a Position of Trust or Authority or Supervision in the First Degree, and Dangerous Crime Against a Child.[25]

The Superior Court held a hearing on the Motion to Suppress in June 2021.[26] Terreros made the same arguments as contained in his Motion, but the State shifted its position, contending that although the warrant authorized a search of "any and all messages" and "any and all messaging apps," police did not actually conduct a

---

[22] *Id*. at A103 (Motion to Suppress).

[23] *Id*. at A110 (Motion to Suppress).

[24] *Id*. at A159 (State's Response to Motion to Suppress).

[25] *Id*. at A4 (Superior Court Docket); *id*. at A11–13 (Re-Indictment). The Re-Indictment did not affect Terreros's arguments in the Motion to Suppress or the State's response to that motion.

[26] *Id*. at A171 (Suppression Hearing Tr.).

6

search of Terreros's e-mails, Facebook, or Instagram, and the warrant therefore was not as broad as it appeared on its face.[27] The State also represented to the court that the absence of any temporal limitation on the face of the warrant was not relevant to evaluating the warrant's breadth because Cellebrite, the software used to conduct the extraction, limited the extraction to the dates listed on the affidavit and application.[28]

The court ultimately denied Terreros's Motion to Suppress, finding that the warrant was not a general warrant because it limited the search to specific categories, did not allow a search of "contacts, e-mails, Facebook, Instagram, or any financial information," and Cellebrite limited the extraction temporally.[29]

---

[27] *Id*. at A192–93 (Suppression Hearing Tr.).

[28] *Id*. at A195 (Suppression Hearing Tr.). Throughout the trial court proceedings and this appeal, the parties used the terms "extraction," "extraction report," and "search" interchangeably. This lack of precision contributed to some of the confusion and misunderstanding in this case. To clarify, as we understand it, Cellebrite software (and similar tools) allows law enforcement to engage in a number of steps to analyze digital data. *See Taylor v. State*, 260 A.3d 602, 610 (Del. 2021); *United States v. Jean-Claude*, 2022 WL 2334509, at *18 (S.D.N.Y. June 27, 2022). First, using the software, law enforcement "extracts" all or nearly all of the data in a digital device to create a forensic copy of the data. The forensic image is not limited to certain categories of data or to particular time periods. Next, law enforcement uses software to analyze the forensic image and separate data into different categories. Finally, law enforcement creates an "extraction report," which is formatted so that it can be accessed and read without Cellebrite software. This extraction report can be limited to particular categories of data and particular dates. *See e.g. Jean-Claude*, 2022 WL 2334509, at *18. According to Cellebrite's website, investigators can conduct a preliminary extraction that "allows access to the device" and later conduct a "selective extraction" that allows investigators to target specific applications or categories of data on the device. Ori Nurick, The Solution That Changed Modern Digital Investigations Forever, Cellebrite Blog (Aug. 4, 2021), https://cellebrite.com/en/the-solution-that-changed-modern-digital-investigations-forever/. With this understanding, we assume that the parties' reference to the cell phone's extraction is actually to the "extraction report" generated by law enforcement and later provided to Terreros.

[29] App. to Opening Br. at A207–08 (Suppression Hearing Tr.).

Terreros's trial began on July 26, 2021, and lasted until July 29.[30]  At trial, J.S. testified to what she told her mother on November 19, 2019.[31]  The CAC interviewer, Amy Kendall, testified about her interview with J.S., and the State played portions of that interview for the jury.[32]  Next, Casillas testified about her relationship with Terreros, what J.S. told her that Terreros had done, and the search history she found on his phone.[33]

The State then admitted Terreros's search history with the assistance of a court interpreter.[34]  The interpreter testified that Terreros had made the following internet searches: "what time does it take for the markers or traces in saliva to be erased," "how the rape of a female child is detected," "what are the possibilities that they can get fingerprints or print from a piece of clothing," "how long will a fingerprint last," "what is a fingerprint," and "what are the possibilities that fingerprints are taken off of a piece of clothing."[35]

---

[30] *Id*. at A7 (Superior Court Docket).

[31] *Id*. at A249 (J.S. Direct Exam.).

[32] *Id*. at A255 (Kendall Direct Exam.).

[33] *Id*. at A270–78 (Casillas Direct Exam.).

[34] *Id*. at A292–94 (Lane Direct Exam.).

[35] *Id*.

8

Testifying in his own defense, Terreros admitted to making the internet searches but explained that he did so to better understand the allegations against him.[36] Terreros also denied ever having sexual contact with J.S.[37]

On July 30, the jury returned its verdict. The jury found Terreros guilty of Sexual Abuse of a Child by a Person in a Position of Trust or Authority or Supervision in the First Degree and Dangerous Crime Against a Child.[38] The jury, however, acquitted Terreros of the Rape First Degree count.[39]

A week later, Terreros filed a Motion for Judgment of Acquittal, arguing that the jury's verdict was inconsistent because, in order to convict him of Child Sexual Abuse, the jury would have had to find that he engaged in sexual intercourse with J.S. By finding him not guilty of Rape First Degree, Terreros argued that the jury implicitly found that he had not engaged in sexual intercourse with J.S.[40] This was so, Terreros contended, because the only element of those offenses actually in dispute was whether he engaged in sexual intercourse with J.S.[41] Additionally,

---

[36] *Id*. at A356 (Terreros Direct Exam.).

[37] *Id*.

[38] *Id*. at A1 (Superior Court Docket).

[39] *Id*.

[40] *Id*. at A405 (Motion for Judgment of Acquittal).

[41] *Id*. Rape First Degree encompasses the following conduct, "when the person intentionally engages in sexual intercourse with another person and any of the following circumstances exist . . . The victim has not yet reached that victim's twelfth birthday, and the defendant has reached that defendant's eighteenth birthday." 11 *Del. C*. § 773(a)(5). Sexual Abuse of a Child by a Person in a Position of Trust, Authority or Supervision in the First Degree includes the following conduct,

9

because the Dangerous Crime Against a Child count relied on the jury finding Terreros guilty of either Rape First Degree or Child Sexual Abuse, he argued that the court also must enter a verdict in his favor on that count.[42]

Terreros argued that, at common law, inconsistent verdicts were set aside, and because Article I, Section 4 of the Delaware Constitution provides jury trial rights that are substantially similar to those at common law, his inconsistent verdicts must be set aside.[43] Terreros reasoned that even if the inconsistency was the result of juror lenity, a phenomenon recognized under federal law, because juries were not allowed to exercise lenity at common law, his verdict violated the Delaware Constitution.[44]

The State, in its Response to the Motion for Judgment of Acquittal, failed to engage with Terreros's arguments rooted in the Delaware Constitution, and instead only addressed whether the verdicts were, in fact, inconsistent, and, if so, whether the inconsistency was the type prohibited by a line of cases referred to as "*Johnson-*

---

"A person is guilty of sexual abuse of a child by a person in a position of trust, authority or supervision in the first degree when the person . . . Intentionally engages in sexual intercourse with a child who has not yet reached that child's own sixteenth birthday and the person stands in a position of trust, authority or supervision over the child, or is an invitee or designee of a person who stands in a position of trust, authority or supervision over the child." 11 *Del. C*. § 778(1).

[42] App. to Opening Br. at A404 (Motion for Judgment of Acquittal). Dangerous Crime Against a Child means "any criminal sexual conduct against a minor under the age of 14 years as defined in §§ 770-773, § 777A, §§ 778 through 778A, or §§ 1108 through 1112B of this title." 11 *Del. C*. § 777(a).

[43] App. to Opening Br. at A415 (Motion for Judgment of Acquittal).

[44] *Id*. at A416–15 (Motion for Judgment of Acquittal).

*Priest*," which are the primary Delaware authorities addressing inconsistent verdicts for predicate-compound offenses.[45]

In denying Terreros's Motion for Judgment of Acquittal, the Superior Court likewise focused its analysis on Terreros's argument under the *Johnson-Priest* line of cases. Although the Superior Court cited Delaware case law, the precedent on which it relied did not address Terreros's argument that the Delaware Constitution affords broader protections against inconsistent verdicts than those set forth in either federal precedent or previous Delaware decisions.[46] The Superior Court agreed with Terreros that the jury's verdicts were inconsistent, but it denied Terreros's Motion for Judgment of Acquittal because it held that Rape First Degree and Child Sexual Abuse are not predicate-compound crimes under the *Johnson-Priest* line of cases, and Terreros's acquittal on the Rape First Degree charge therefore did not negate his conviction for the Child Sexual Abuse charge.[47] Accordingly, applying a different line of cases known as "*Powell-Tilden*," which applies outside of predicate-compound offenses, the Superior Court held that Terreros's Child Sexual Abuse

---

[45] *Id.* at A438–40 (Response to Motion for Judgment of Acquittal) (citing *Johnson v. State*, 409 A.2d 1043 (Del. 1979); *Priest v. State*, 879 A.2d 575 (Del. 2005)).

[46] *State v. Terreros*, 2021 WL 5577253, at *4–6 (Del. Super. Nov. 29, 2021).

[47] *Id.* at *6 (Del. Super. Nov. 29, 2021) (citing *Johnson*, 409, A.2d 1043; *Priest*, 879 A.2d at 587).

conviction was supported by sufficient evidence, and the jury's inconsistency therefore could be explained by mistake or lenity.[48]

Terreros timely filed this appeal, arguing that the Superior Court abused its discretion when it denied his Motion to Suppress and erred when it denied his Motion for Judgment of Acquittal.[49] Terreros advances the same arguments on appeal that he did in the trial court: (i) the cell phone search warrant was a general warrant because it is not sufficiently particular; and (ii) his inconsistent verdicts offend Article I, Section 4 of the Delaware Constitution.

## II.    STANDARD OF REVIEW

This Court reviews the denial of a motion to suppress for abuse of discretion.[50] We will reverse the trial court's factual findings only if they are clearly erroneous.[51] The trial court's legal conclusions, including those addressing constitutional issues, are reviewed *de novo*.[52]

## III.    ANALYSIS

For the reasons set forth below, we conclude that the warrant constituted a general warrant and all the evidence seized from Terreros's phone therefore should

---

[48] *Terreros*, 2021 WL 5577253, at *6 (citing *United States v. Powell*, 469 U.S. 57, 66 (1984); *Tilden v. State*, 513 A.2d 1302, 1306–07 (Del. 1986)).

[49] Opening Br. at 2.

[50] *Flonnory v. State*, 893 A.2d 507, 515 (Del. 2006).

[51] *Loper v. State*, 8 A.3d 1169, 1172 (Del. 2010).

[52] *Hall v. State*, 788 A.2d 118, 123 (Del. 2001).

have been suppressed in its entirety.  Accordingly, the Superior Court abused its discretion when it denied Terreros's Motion to Suppress.  We also conclude that Terreros properly raised the argument that his inconsistent verdicts violated Article I, Section 4 of the Delaware Constitution, and we cannot fairly consider that novel argument until the State engages with the issue and the trial court addresses it.  We therefore reverse and remand this action for proceedings consistent with this Opinion.

**A.    The warrant was general and the evidence seized under it should have been suppressed.**

We begin our analysis with an overview of the Fourth Amendment's particularity requirement and how its contravention produces general warrants.  We next consider how the warrant here failed in several respects to meet the particularity requirement.  We then turn to the only remedy that adequately addresses the effects of a general warrant—full suppression.  Finally, we conclude that the court's decision not to suppress the fruits of the warrant did not constitute harmless error beyond a reasonable doubt.

**1.    The Particularity Requirement and General Warrants**

It is axiomatic that the United States and Delaware Constitutions provide protections to those whose property is subject to an investigatory police search.

The Fourth Amendment to the United States Constitution contains the following protections:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.[53]

Article I, Section 6 of the Delaware Constitution provides substantially the same protections:

The people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and no warrant to search any place, or to seize any person or thing, shall issue without describing them as particularly as may be; nor then, unless there be probable cause supported by oath or affirmation.[54]

Both constitutions require that a warrant be supported by probable cause and describe the places and things to be searched *with particularity*.[55]

A warrant application must contain sufficient facts—viewed under the totality of the circumstances[56]—to allow a neutral magistrate to conclude that there is a "fair probability" both that a crime has been committed and that evidence of that crime

---

[53] U.S. Const. amend. IV.

[54] Del. Const. Art. I § 6.

[55] *Fink v. State*, 817 A.2d 781, 786 (Del. 2003). Additionally, 11 *Del. C.* § 2306 provides that "[t]he application or complaint for a search warrant shall be in writing, signed by the complainant and verified by oath or affirmation. It shall designate the house, place, conveyance or person to be searched and the owner or occupant thereof (if any), and shall describe the things or persons sought as particularly as may be, and shall substantially allege the cause for which the search is made or the offense committed by or in relation to the persons or things searched for, and shall state that the complainant suspects that such persons or things are concealed in the house, place, conveyance or person designated and shall recite the facts upon which such suspicion is founded."

[56] *Stafford v. State*, 59 A.3d 1223, 1229 (Del. 2012) ("'[t]he probable cause standard is incapable of precise definition . . . because it deals with probabilities and depends on the totality of the circumstances.' The substance of all probable cause definitions, however, is a 'reasonable ground for belief of guilt,' which must be particular to the person seized.").

will be found in the particular place identified in the warrant.[57] The probable cause requirement mandates that the "affidavit in support of the search warrant must, within the four corners of the affidavit, set forth facts adequate for a judicial officer to form a reasonable belief that an offense has been committed and the property to be seized will be found in a particular place."[58] The four-corners test requires that the probable cause finding be supported only by those facts set forth within the warrant affidavit or application.[59]

It is undisputed in this case that the warrant contained probable cause for the reviewing judicial officer to conclude that a crime—rape—had occurred. Our focus then shifts to the "place" to be searched and whether the affidavit articulates sufficient probable cause to conclude that evidence will be found in that particular location, i.e., whether the affidavit identifies a nexus between the evidence sought and the place to be searched.[60] In its most basic form, an affidavit must point not only to the evidence to be seized and the place to be searched, but also the reason *why* the affiant believes such evidence will be found in the place to be searched.[61]

---

[57] *State v. Holden*, 60 A.3d 1110, 1114 (Del. 2013).

[58] *LeGrande v. State*, 947 A.2d 1103, 1107 (Del. 2008).

[59] *Valentine v. State*, 207 A.3d 566, 570 (Del. 2019).

[60] *Dorsey v. State*, 761 A.2d 807, 812 (Del. 2000); *Blount v. State*, 511 A.2d 1030, 1033 (Del. 1986).

[61] 11 *Del. C.* § 2306.

Here, the affidavit and application contained sufficient facts to allow a magistrate to conclude that evidence, specifically Terreros's internet search history in the days shortly after the alleged rape, would be found in a search of his phone. Terreros effectively conceded as much.[62] But probable cause alone does not satisfy constitutional or statutory law with respect to searches. The warrant also must satisfy the particularity requirement, which is fundamental and performs its own work in protecting against unreasonable searches and seizures.[63] To pass constitutional muster, the warrant itself must describe the things to be seized and the places to be searched with particularity such that "nothing is left to the discretion of the officer executing the warrant."[64] A warrant that fails to conform with the particularity requirement is unconstitutional.[65]

Insufficiently particular warrants fall into two categories.[66] The first such category is a general warrant, which allows law enforcement to conduct an

---

[62] Opening Br. at 7 ("The affidavit does not state, or allow for an inference, that there would be any relevant evidence on the phone other than the suspicious searches which occurred after November 19, 2023.").

[63] *Berger v. New York*, 388 U.S. 41, 63 (1967).

[64] *Marron v. United States*, 275 U.S. 192, 196 (1927); *Groh v. Ramirez*, 540 U.S. 551, 557 (2004). The United States Supreme Court does not foreclose the ability of warrants to incorporate supporting documents by reference, but the warrant must use appropriate words of incorporation to do so. *Id.* at 557–58.

[65] *Massachusetts v. Sheppard*, 468 U.S. 981, n.5 (1984) (citing *Stanford v. Texas*, 379 U.S. 476, 485 (1965)).

[66] *Maryland v. Garrison*, 480 U.S. 79, 84 (1987) ("The Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except one 'particularly describing the place to be searched and the persons or things to be seized.' The manifest purpose of this particularity

indiscriminate search.[67] The second category is an overbroad warrant. An overbroad warrant explicitly allows investigators to search places and things when no probable cause exists to search them.[68]

Although the line between these two warrant categories at times can be thin, the distinction often turns on whether the warrant allows investigators to conduct an "exploratory rummaging," [69] which is indicative of a general warrant, or allows police to search in specified places or for specified items more broadly than the articulated probable cause, which is an overboard warrant.[70] Distinguishing between the two categories of warrants is essential because each carries its own remedy. All fruits of a general warrant must be suppressed in their entirety, whereas an overbroad warrant, the less constitutionally offensive of the two, can be redacted as to the portions of the search for which no probable cause exists.[71]

---

requirement was to prevent general searches. By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit. Thus, the scope of a lawful search is 'defined by the object of the search and the places in which there is probable cause to believe that it may be found.'").

[67] *Wheeler v. State*, 135 A.3d 282, 292 (Del. 2016).

[68] *Id*. at 296.

[69] *Andresen v. Maryland*, 427 U.S. 463, 480 (1976) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971)) ("General warrants of course, are prohibited by the Fourth Amendment. '(T)he problem (posed by the general warrant) is not that of intrusion per se, but of a general, exploratory rummaging in a person's belongings. . . . (The Fourth Amendment addresses the problem) by requiring a 'particular description' of the things to be seized.'").

[70] *United States v. Yusef*, 461 F.3d 374, n.19 (3d Cir. 2006).

[71] *United States v. Christine*, 687 F.2d 749, 758 (3d Cir. 1982).

These principles do not change or disappear when the "place" to be searched or "evidence to be seized" is digital in nature.[72] To the contrary, in *Riley v. California*,[73] the United States Supreme Court recognized that the immense amount of digital information stored on cell phones creates privacy issues to which Fourth Amendment principles must be applied.[74] To address these privacy concerns, the *Riley* court clarified that, absent exigent circumstances, police must obtain a warrant to search a phone's digital contents, rejecting the argument that police could search the data contained in a cell phone that was seized incident to a lawful arrest.[75]

Four years after *Riley,* in *Carpenter v. United States*,[76] the United States Supreme Court held that law enforcement must obtain a warrant to acquire an extended period of an individual's cell-site location information, even though law enforcement obtained the location records from a third-party cell phone company.[77] The Court explained that permitting police to obtain an individual's cell phone location history without a warrant and thereby track a person's movements over an

---

[72] *Riley v. California*, 573 U.S. 373, 401–02 (2014) (Requiring a warrant to search the digital contents of a cell phone absent exigent circumstances).

[73] 573 U.S. 373 (2014).

[74] *Id*. at 394–97.

[75] *Id*. at 401.

[76] *Carpenter v. United States*, 585 U.S. ---, 138 S.Ct. 2206 (2018).

[77] *Id*. at 2217.

extended period[78] contravenes the Fourth Amendment's privacy protections.[79] In so holding, the Supreme Court held that an individual maintains a privacy interest in "the record of his physical movements as captured through [cell-site location information]," even when that information is shared with or stored by the phone carrier.[80]

With that foundation, we turn to this Court's previous consideration of the particularity requirement as applied to digital data. On three occasions in the past seven years, our Court has held that warrants to search digital data constituted general warrants for purposes of the particularity requirement.

In *Wheeler v. State*, this Court had its first opportunity to consider the particularity requirement as applied to warrants to search digital data.[81] There, police were investigating witness tampering allegations relating to the defendant's communications with individuals he had previously victimized.[82] Although the

---

[78] The cell-site information that law enforcement obtained in *Carpenter* included 127 days of location history from one wireless carrier and two days of location history from a second carrier. *See id.* at 2212.

[79] *Id*. at 2218.

[80] *Id* at 2217. *But see Hudson v. State*, --- A.3d ---, 2024 WL 91187 (Del. Jan. 9, 2024) (holding that *Carpenter*'s reasoning is not applicable to warrants for cell tower "dumps," which provide information regarding all the cell phones that utilized particular cell towers in "an extremely limited and specific window of time, and for a limited geographic area.")

[81] *Wheeler*, 135 A.3d at 302. This Court previously had considered digital search warrants in *Bradley v. State*, 51 A.3d 423 (Del. 2012) and *Fink*, 817 A.2d 781, but not as applied to the particularity requirement.

[82] *Wheeler*, 135 A.3d at 287–89.

warrant application and affidavit only contained probable cause to support a search for physical communications in the form of letters, notes, and books, the warrant allowed for a sweeping search of "any and all data" stored on "any personal computer," "any digital or optical device," "any cellular telephone," and "any digital camera."[83]

In *Wheeler*, we recognized that the vast amount of information stored on digital devices presents "unique challenges in satisfying the particularity requirement."[84] Although we acknowledged the difficulty that affiants may face when crafting a search warrant that satisfies the Fourth Amendment's requirements, we also firmly upheld the importance of preventing general searches.[85] In striking a balance between the two, we eschewed a "hyper technical" test and instead announced that law enforcement must provide a description of the items to be search and seized that is as specific as possible at the current investigative juncture.[86]

Ultimately, we concluded that where law enforcement can obtain "a more precise description of the alleged criminal activity that is the subject of the warrant, such information should be included in the instrument, and the search and seizure should be appropriately narrowed to the relevant time period so as to mitigate the

---

[83] *Id.* at 289.

[84] *Id.* at 299.

[85] *Id.*

[86] *Id.* at 300–01.

potential for unconstitutional exploratory rummaging."[87]  We further held that the

*Wheeler* warrant failed the particularity requirement because it did not contain

sufficient probable cause to support the authorized searches of all digital content.[88]

In other words, the warrant lacked a sufficient nexus between the types of digital

media to be searched and the investigation's current evidence of criminal activity.

Two years later, in *Buckham v. State*,[89] we considered whether a search

warrant for the defendant's phone constituted a general warrant.  The *Buckham*

investigators had been looking for GPS evidence of Buckham's whereabouts during

a six-week period.[90]  Rather than authorizing a search for GPS data during that time

period, the warrant allowed police to search for "[a]ny and all store[d] data contained

within the internal memory of the cellular phones."[91]  We concluded that although

the affidavit provided probable cause to search the phone for GPS data, a search of

any other digital data lacked probable cause. [92]  In other words, we held that the

affidavit did not provide a sufficient nexus between the articulated probable cause

and the authorization to search the defendant's call-log, photos, and text messages.

---

[87] *Id*. at 301; 305.

[88] *Id*. at 306.

[89] 185 A.3d 1 (Del. 2018).

[90] *Id.* at 5.

[91] *Id*. at 6.

[92] *Id*. at 19.

We described this warrant as containing a "mismatch between the scope of the warrant and the probable cause."[93]

Most recently, in *Taylor v. State*,[94] we considered whether a warrant that allowed investigators to search "any/all data stored by whatever means . . . of said cellular telephone, to include but not limited to registry entries, pictures, photographs, images, audio/visual recordings, multi-media messages, web browsing activities, electronic documents, location information . . . and any other information/data pertinent to this investigation within said scope," violated the particularity requirement.[95] There, the defendant was charged with murder, robbery and firearm-related offenses in connection with a gang killing.[96]

In *Taylor*, we reiterated the *Wheeler* rule: a warrant must "describe the items to be searched for and seized with as much particularity as the circumstances reasonably allow and is no broader than the probable cause on which it is based."[97] We held that the *Taylor* warrant did not meet the particularity requirement because, like the warrants at issue in *Wheeler* and *Buckham*, it "authorized 'a top-to-bottom search' of '[a]ny and all store[d] data' of the digital contents of the devices" and

---

[93] *Id.* at 20.

[94] 260 A.3d 602 (Del. 2021).

[95] *Id.* at 609.

[96] *Id.* at 604–10.

[97] *Id.* at 615.

"used the open-ended language 'including but not limited to' to describe the places to be searched."[98] Ultimately, we concluded that the warrant "allowed investigators to conduct an unconstitutional rummaging through all of the contents of Taylor's smartphones to find whatever they decided might be of interest to their investigation."[99] In all three cases, we held that the warrant constituted a general warrant and that all the evidence seized therefrom should have been suppressed.[100]

Taken together, *Wheeler*, *Buckham*, and *Taylor* instruct that reviewing courts should consider whether the warrant's explicit language and its practical effect allow law enforcement to search categories of digitally stored information that lack a sufficient nexus to their investigation. Here, although the warrant identified categories of digital evidence to be searched, rather than referring to "any and all" data, it constituted a general warrant because the listed categories comprised almost all of the phone's data and only one of those categories was supported by the probable cause articulated in the affidavit.

### 2. The warrant here constituted a general warrant.

Terreros argues that because the affidavit and application provided probable cause only as to his phone's internet search history over the course of a few days,

---

[98] *Id.* (quoting *Buckham*, 185 A.3d at 18–19).

[99] *Taylor*, 260 A.3d at 615.

[100] *Wheeler*, 135 A.3d at 307; *Buckham*, 185 A.3d at 20; *Taylor*, 260 A.3d at 618–19.

the warrant was a general warrant because it authorized the search of "nearly the entire phone."[101]  Terreros also contends that the lack of any temporal limitation on the warrant's face supports his position that it was a general warrant, and that the trial court erred in relying on the State's inaccurate representations that the search was limited to the dates listed in the affidavit.[102]  In response, the State contends that this was not a general warrant because "it limited the categories of data to be searched and, when read in a common-sense way . . . had a temporal limit."[103]  The State does not, however, even attempt to argue how any category of data, other than Terreros's search history and GPS information, was supported by probable cause.[104]

We agree with Terreros; the Superior Court abused its discretion when it found that the warrant was not a general warrant.  The Superior Court distinguished this warrant from those in *Wheeler* and *Buckham* because, it held, the warrant for Terreros's phone identified specific categories of data, did not authorize a search of "any and all" categories of data, and excluded categories such as contacts, e-mail, social media, and financial information.[105]  The court also found that, although the

---

[101] Opening Br. at 2.

[102] *Id*. at 12.

[103] Answering Br. at 11.

[104] *Id*.  Recall, the warrant authorized police to extract and search "Any and all messages, any and all messaging apps, all search history, all photographs, videos, GPS coordinates, incoming and outgoing calls used or intended to be used for Rape 2nd by person of authority."  App. to Opening Br. at A119 (Warrant).

[105] *Id*. at A207 (Suppression Hearing Tr.).  We issued our decision in *Taylor*, 260 A.3d 602, one week after the Superior Court held the suppression hearing.  App. to Opening Br. at A170

body of the warrant contained no temporal limitation, the extraction and search were temporally limited by Cellebrite, the third party company whose software law enforcement uses to conduct cell phone extractions and searches.[106] The court noted that this "neutral third party extraction" was one of "two factors weighing against suppression" on the issue of the temporal limitation.[107] The other factor on which the court relied was Terreros's failure to identify authority supporting his argument that the evidence falling within the appropriate time frame should be suppressed along with evidence falling outside the appropriate time frame.[108]

### a. The warrant was not particular regarding the categories of data to be searched.

Although the warrant for Terreros's phone did not go so far as to authorize a search of "any and all data," that was, in effect, what the warrant permitted law enforcement to extract and search. In other words, this warrant gave police the authority to conduct an indiscriminate search through Terreros's cell phone. The State argues that this warrant is distinguishable from those in *Wheeler*, *Buckham*, and *Taylor* because it specified the types of data that law enforcement could search

---

(Suppression Hearing Tr.). The parties and Superior Court therefore could not rely on that decision to guide their arguments and analysis.

[106] *Id.* at A208 (Suppression Hearing Tr.).

[107] *Id.*

[108] *Id.* at A208–09 (Suppression Hearing Tr.).

25

in Terreros's phone. But the distinction the State identifies does not come close to addressing the warrant's constitutional infirmities.

The Fourth Amendment demands a nexus between the probable cause articulated in the affidavit and each place to be searched.[109] Even the State conceded that the affidavit does not provide facts sufficient to conclude that any evidence of the alleged crime would be found in Terreros's messages, messaging apps, photos, videos, or call logs.[110] And although the State contends otherwise, there are no facts contained in the affidavit that set forth probable cause to believe that Terreros's GPS data would contain evidence of a crime.[111] Accordingly, the affidavit only contained a nexus between the crime and Terreros's internet history, but the warrant allowed police to search nearly every category of data on the cell phone. Our Constitution does not allow that type of "exploratory rummaging" through digital data.[112]

---

[109] *Dorsey*, 761 A.2d at 812; *Blount*, 511 A.2d at 1033.

[110] The State conceded this at oral argument and during the suppression hearing. Oral Argument at 33:35-34:16; App. to Opening Br. at A193 (Suppression Hearing Tr.).

[111] App. to Opening Br. at A121–22 (Warrant Application). Additionally, although the affidavit states that J.S.'s mother found "pornography" in addition to the other searches in Terreros's history, this is not an argument on which the State ever relied as creating a nexus between the facts in the affidavit and probable cause to search Terreros's photos and videos. In fact, the State appears to have abandoned the allegation that J.S.'s mother found pornography on Terreros's phone and reported it to police. App. to Opening Brief at A155 (State's Response to Motion to Dismiss).

[112] *Andresen*, 427 U.S. at 480 (quoting *Coolidge*, 403 U.S. at 467).

To juxtapose, in *Thomas v. State*,[113] we recently held that the Superior Court did not abuse its discretion when it found that a warrant obtained in a stalking investigation was overbroad but not general because it identified the specific types of data to be searched, all of those categories were supported by probable cause, the warrant did not contain the "including but not limited to" language, and it identified a temporal limitation.[114] Critically, we also held that the phone was an instrumentality in the stalking crime, and unlike *Wheeler*, *Buckham*, and *Taylor*, the investigators in *Thomas* did not have a more precise description of the place to be searched when applying for the warrant.[115] We reiterated the United States Supreme Court's distinction between a general and an overbroad warrant:

> Between a general warrant, which is invalid because it vests the executing officers with unbridled discretion to conduct an exploratory rummaging through [the defendant's] papers in search of criminal evidence, and an overly broad warrant, which "describe[s] in both specific and inclusive general terms what is to be seized," but "authorizes the seizure of items as to which there is no probable cause ..." [A]n overly broad warrant can be redacted to strike out those portions of the warrant that are invalid for lack of probable cause, maintaining the remainder of the warrant that satisfies the Fourth Amendment. In contrast, the only remedy for a general warrant is to suppress all evidence obtained thereby.[116]

---

[113] *Thomas v. State*, --- A.3d ---, 2023 WL 6379829 (Del. Oct. 2, 2023).

[114] *Id*. at *14 (Del. Oct. 2, 2023).

[115] *Id*.

[116] *Yusef*, 461 F.3d at n.19.

27

Here, even though the warrant identified specific categories of data, rather than referring to "any and all data," each category was preceded by "any and all" language with no temporal limitation. The identified categories also constitute a large portion of the total extractable data on the cell phone. Finally, the investigators had a more precise description of the places to be searched than was provided in the warrant.[117] Based on the facts in the affidavit, there was no probable cause to believe that any type of data on Terreros's phone would yield seizable evidence other than his internet search history.

The warrant here is closer to *Buckham* than it is to *Thomas* because "the scope of the warrant so far outruns [the] probable cause finding—and is so lacking in particularity relative to that probable cause finding."[118] In essence, the warrant authorized the very type of unbounded fishing expedition that the particularity requirement is intended to prevent.

### b. The warrant contained no temporal range.

Like *Wheeler*, *Buckham*, and *Taylor*, this warrant contained no temporal limitation, "despite relevant dates being available to the police."[119] Here too, this

---

[117] *Thomas*, 2023 WL 6379829, at *14.

[118] *Buckham*, 185 A.3d at 18.

[119] *Wheeler*, 135 A.3d at 304; *Buckham*, 185 A.3d at 19; *Taylor*, 260 A.3d at 611.

warrant is distinguishable from the one in *Thomas*, which provided a temporal limitation, even though the timeframe was broader than necessary.[120]

We know investigators had "a more precise description" of the temporal period that should be applied to the search because the affidavit included date limitations,[121] albeit inconsistent ones.[122] At the suppression hearing, the State sought to blame the missing timeframe in the warrant on the authorizing magistrate,[123] although nothing in the record supports that premise. The State also argued that this omission was inconsequential because the supporting application and affidavit included the relevant temporal limitation.[124] But the State failed to carry its burden of showing that the temporal limitation included in the warrant's supporting documents was incorporated by reference into the warrant itself.

The State's reliance on the dates in the application and affidavit fails for two reasons. *First*, the United States Supreme Court has confirmed that, "[t]he Fourth Amendment by its terms requires particularity *in the warrant,* not in the supporting documents."[125] The Court then explained that a warrant may incorporate other

---

[120] *Thomas*, 2023 WL 6379829, at *15.

[121] App. to Opening Br. at A120; A122 (Application and Affidavit).

[122] The application and affidavit included two different temporal limitations: one from November 18 to November 23 and one from November 19 to November 23. *Id.*

[123] *Id.* at A195 (Suppression Hearing Tr.) ("It's an omission essentially of the date. I'm unaware of when it was taken out. The allegation is that the JP court took it out.").

[124] *Id.* at A194 (Suppression Hearing Tr.).

[125] *Groh*, 540 U.S. at 557.

documents by reference when "the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant."[126] Here, although the application and affidavit were attached to the warrant when the JP Court received it, the warrant itself did not use explicit language incorporating the affidavit. To be sure, the warrant specified that it relied "[u]pon the annexed affidavit and application" and identified the cell phone to be searched as the one "described in the annexed affidavit and application." There is, however, no indication on the face of the warrant that it intended to incorporate any other information contained in the application.[127] The record also lacks evidence that the application and affidavit accompanied the signed warrant when it was transmitted to law enforcement.

*Second*, the State did not even argue incorporation by reference on appeal.[128] The State's brief is devoid of any mention of incorporation by reference or the case law supporting it. Instead, the State simply stated that the temporal limitation "was clearly set forth in the body of the affidavit of probable cause."[129] We are unwilling to adopt an argument that the State did not advance on appeal or in the trial court.

---

[126] *Id*. at 557–58. Circuit courts have explained that supporting documents "accompany" a warrant when they are "attached" to it such that they are "physically connected so that they constitute one document." *United States v. Williamson*, 1 F.3d 1134, n.1 (10th Cir. 1993); *United States v. Maxwell*, 920 F.2d 1028, 1032 (D.C. Cir. 1990).

[127] App. to Opening Br. at A119 (Warrant).

[128] Oral Argument (23:22-23:47; 29:50-30:07).

[129] Answering Br. at 13.

### c. The Superior Court's holding relied on the State's misrepresentations.

Compounding the troubling aspects of this case, the trial court's reasoning in denying the Motion to Suppress relied on multiple misstatements by the State. [130] During the suppression hearing, the State consistently represented to the court that Cellebrite, a company that produces software used to perform cell phone extractions, was a neutral third-party that could limit the search's temporal scope to the dates contained in the application.[131] This is manifestly incorrect; the extraction and search were conducted by law enforcement using Cellebrite software. The State now concedes as much on appeal.[132] But the damage was done during the suppression hearing when the court ultimately concluded that "the cell phone company understood that there was a temporal limitation."[133] To the contrary, the record does not show that law enforcement applied any temporal limitation during the search.[134]

The court also found that the warrant was not general because it did not authorize a search of Terreros's email or his social media accounts like Instagram

---

[130] This Court does not ascribe to any of these statements an intent on the State's part to mislead the trial court. Nonetheless, the confusion created by the State's lack of clarity leaves the warrant impossible to uphold on this record.

[131] App. to Opening Br. at A195–196 (Suppression Hearing Tr.).

[132] Answering Br. at 13.

[133] App. to Opening Br. at A201 (Suppression Hearing Tr.).

[134] *Id*. at A16–101 (Extraction Report).

and Facebook.[135] This conclusion was based on the State's representations regarding the extraction data, not what the four corners of the warrant authorized.[136] The warrant expressly authorized a search of "any and all messaging apps," which would include Instagram, Facebook, and other social media applications that include messaging capabilities. In fact, the court specifically inquired whether e-mail and social media were included under the "messaging app" category, but the court ultimately adopted the State's representation that, because data from those apps was not part of the extraction report, they were not included under that category.[137]

The trial court's conclusion cannot be sustained because the warrant's four corners authorized a search of Terreros's messages, including social media data, and it is the warrant's scope—and not the search's results—that must be evaluated under the Fourth Amendment. Moreover, although the State represented to the Superior Court that officers did not search Instagram or Facebook,[138] the extraction report included data from Facebook, Instagram, and WhatsApp.[139] Specifically, the

---

[135] App. to Opening Br. at A119 (Warrant); *Id*. at A207 (Suppression Hearing Tr.).

[136] *Id*. at A192–93 (Suppression Hearing Tr.).

[137] *Id*. at A196; A207 (Suppression Hearing Tr.).

[138] *Id*. at A193 (Suppression Hearing Tr.).

[139] *Id*. at A213 (Extraction Report).

32

extraction report included 154 Facebook chat messages, 7 Instagram chat messages, and 2888 WhatsApp messages.[140]

### 3. The fruits of the search should have been suppressed.

To reiterate, the only nexus between Terreros's cell phone and the alleged rape was the internet search history that Casillas saw on the phone shortly after the incident occurred. A warrant that met constitutional particularity requirements would have authorized a search of Terreros's internet history during the handful of days between the alleged crime and when Casillas reviewed the phone's search history. Instead, the warrant permitted law enforcement to search nearly every major category of data contained within the phone without regard to date.

To borrow Terreros's analogy, if law enforcement submits an affidavit with sufficient facts to support a search of one closet in one room of a house, a warrant authorizing a search of the entire house does not become sufficiently particular because it identifies each individual room in the house rather than saying "any and all rooms." But that is effectively what law enforcement did here by substituting the "any and all data" language found lacking in *Buckham* with a list of all major categories of data on the phone. This is the very exploratory rummaging that the founders intended to prohibit under the Fourth Amendment.

---

[140] *Id*.

Because we have previously made clear that the evidence seized under a general warrant must be suppressed in its entirety,[141] we now hold that the Superior Court abused its discretion when it denied Terreros's Motion to Suppress. The warrant at issue was not merely overbroad, and so the motion to suppress should have been granted, even as to the small amount of evidence for which there was probable cause to search.

### 4. The State failed to prove harmless error beyond a reasonable doubt.

Finally, the State has not carried its burden of demonstrating that the evidence's admission was harmless. The State bears the burden of proving harmless error,[142] and in this case the State must show that the error was harmless beyond a reasonable doubt because the error violated Terreros's constitutional rights.[143] In order to conclude that the improper admission of evidence constituted harmless error, we must have no "reasonable fear that injustice occurred that might have influenced the trial."[144] If the unconstitutionally admitted evidence was "critical," we cannot conclude that the State met its burden on harmless error.[145]

---

[141] *Taylor*, 260 A.3d at 617–18 ("There is no room, however, for limited suppression of evidence seized under a general warrant.").

[142] *Fowler v. State*, 194 A.3d 16, 23 (Del. 2018); *Dawson v. State*, 608 A.2d 1201, 1204 (Del. 1992).

[143] *Taylor*, 260 A.3d at 618; *Fowler*, 194 A.3d at 23; *Dawson*, 608 A.2d at 1204.

[144] *Fowler*, 194 A.3d at 23.

[145] *Taylor*, 260 A.3d at 618.

Here, although Casillas testified to the contents of Terreros's search history, her testimony was bolstered by the admission of the data confirming those searches and their contents.[146]  Had the State been unable to introduce the search history, Casillas likely would have been subject to a more rigorous and effective cross-examination without exhibits to corroborate her testimony.[147]  We also note that the inconsistent verdicts here are evidence that the jury may have viewed this as a close case.  For those reasons, we cannot conclude that the introduction of Terreros's search history was harmless beyond a reasonable doubt.

**B.    We must remand so that the State and the trial court can respond to and resolve Terreros's state constitutional argument.**

Terreros properly raised his inconsistent verdicts argument in the trial court and on appeal.  The State, however, did not engage with the substantive issues in either forum.  In the Superior Court, the State only addressed whether Terreros's charges fell within the *Johnson-Priest* line of cases or instead could be upheld as an exercise of jury lenity under *Powell-Tilden*.  On appeal, the State repeated those arguments and asserted—incorrectly—that Terreros did not properly preserve his

---

[146] App. to Opening Br. at A276 (Casillas Direct. Exam.).

[147] We do not address Terreros's argument that the mother's testimony would have been excluded absent the corroborating internet searches.  The trial court may address that evidentiary issue if it is raised during retrial.

separate constitutional argument.[148]  At oral argument, the State conceded that it had not properly briefed the issue.[149]

In *Ortiz v. State*[150] we held that "[t]he proper presentation of an alleged violation of the Delaware Constitution should include a discussion and analysis of one or more of the criteria set forth in" *Jones v. State*[151] or other applicable criteria.[152] The non-exhaustive *Jones* criteria include: textual language, legislative history, pre-existing state law, structural differences, matters of particular state interest or local concern, state traditions, and public attitudes.[153]

Here, Terreros properly presented to the trial court his argument that inconsistent verdicts violate Article I, Section 4 of the Delaware Constitution.  In his Motion for Judgment of Acquittal, Terreros identified the textual language in Article I, Section 4, Delaware precedent, precedent from other jurisdictions, and common law history.[154]  In response, the State identified federal and state precedent affirming factually inconsistent verdicts produced by jury lenity, without addressing whether

---

[148] Answering Br. at 21–22.

[149] Oral Argument (39:20-40:17; 40:51-41:50; 42:30-42:58).

[150] *Ortiz v. State*, 869 A.2d 285 (Del. 2005).

[151] *Jones v. State*, 745 A.2d 856, 864–65 (Del. 1999).

[152] *Ortiz*, 869 A.2d at n.4.

[153] *Jones*, 745 A.2d at 864–65.

[154] App. to Opening Br. at 415–417 (Motion for Judgment of Acquittal).

consistent verdicts were a fundamental feature of the common law when the Delaware Constitution was adopted.[155]

The trial court's holding denying Terreros's Motion for Judgment of Acquittal mirrored the State's briefing and did not address the Delaware constitutional issues Terreros raised.[156] Because Terreros's argument is premised on the fact that the Delaware Constitution affords broader protections than those permitted by federal courts, the trial court must engage in an analysis under our state constitution once it has the benefit of briefing from both sides.[157]

To properly address the important issues raised by a non-frivolous and novel argument based on the Delaware Constitution, this Court requires adversarial briefing. The adversarial process faltered here because the State failed to engage with the issue in the trial court and on appeal. The trial court's analysis is also fundamental to helping the parties develop the issues and allowing this Court to provide a comprehensive analysis. "In short, the important state constitutional claim [that Terreros] has raised deserved full and fair consideration by the trial court in this case."[158]

---

[155] *Id.* at A435–41 (State's Response to Motion for Judgment of Acquittal).

[156] *Terreros*, 2021 WL 5577253, at *2.

[157] *Garnett v. State*, --- A.3d ---, 2023 WL 6987145, at *14 (Del. Oct. 24, 2023); *Juliano v. State*, 254 A.3d 369, 372 (Del. 2020); *Dorsey*, 761 A.2d at 820.

[158] *Davis v. State*, 2023 WL 7382873, at *4 (Del. Nov. 8, 2023).

Accordingly, we remand this issue to the trial court for further consideration of the constitutional issues raised by Terreros's Motion for Judgment of Acquittal.[159]

## IV. CONCLUSION

For the foregoing reasons, the Superior Court erred in denying Terreros's Motion to Suppress. Accordingly, we REVERSE Terreros's convictions. We REMAND this case to the Superior Court for further proceedings consistent with this Opinion. Jurisdiction is not retained.

---

[159] We leave to the trial court's discretion how to structure briefing and oral argument after remand. Although we have held that Terreros is entitled to a new trial because the evidence obtained from the unconstitutional warrant should have been suppressed before trial, we also have remanded for further proceedings regarding the Motion for Judgment of Acquittal, since the resolution of that motion may affect whether Terreros can be retried on the Child Sexual Abuse and Dangerous Crimes Against a Child counts. *See, e.g. State v. Halstead,* 791 N.W.2d 805, 816 (Iowa 2016).